## TEXAS & N. O. R. CO. v. WOOD.
### No. 11204.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 4, 1942.

Rehearing Denied Dec. 2, 1942.

Crain, Vandenberge & Stofer, of Victoria, for appellant.

J. W. Ragsdale, of Victoria, for appellee.

NORVELL, Justice.

Texas and New Orleans Railroad Company has appealed from a judgment in favor of Billie Wood for personal injuries received by him while loading mules upon the railroad's car at Beeville, Texas.

By its first point the railroad contends that the trial court erred in overruling its motion for a peremptory instruction. It is asserted that there is no evidence showing that appellant was guilty of negligence in failing to fulfill a duty owed by it to the appellee, Wood. Appellant says that as Wood attributed his injury to the defective construction of a platform, and it appears that such defects were obvious and known to Wood prior to his injury, no cause of action lies.

Appellee was an invitee upon the premises of the railroad company, and at the time of his injury was engaged in loading mules owned by him into a stock car for shipment furnished by the railroad company for that purpose. Appellee complains that the railroad company was negligent in constructing a "sliding platform" so that it was wider at one end than it was at the other; that this negligence proximately caused his injuries which were sustained as a result of his stepping backward off of said sliding platform. The jury's findings were in accord with appellee's contention.

It appears that the equipment furnished by the railroad company for stock loading purposes at the place where Wood sustained his injuries, consisted of a stock pen connected with a stationary platform by means of an inclined walk or chute. This stationary platform was in the form of a parallelogram approximately sixteen feet north and south by seven feet three inches east and west. Its deck was about four and a half feet above the ground. A stock car had been spotted parallel to and approximately three and one-half feet from the stationary platform, the center of the car door being approximately opposite the center of the stationary platform. Another platform, described by witnesses as a "sliding" or "rolling" platform was used to connect the stationary platform with the stock car. This is the device which Wood contends was defective. Witnesses for the appellant testified that all of the equipment furnished by the railroad at the point of loading, including the sliding platform, was standard in design and construction for use in and about the vicinity of Beeville. The standard or typical sliding platform, as described by appellant's witnesses, consisted of a deck constructed of six 8″ by 2″ planks or boards forming a parallelogram 12 feet long by 4 feet wide. This sliding platform overlapped the stationary platform and was connected to the stock car door opening by means of a "flap board" (4′ 3″ by 12″), slightly smaller in width than the door entrance and connected by a hinge to the central part of the outside edge of the sliding platform. This flap board when in use extended into the door opening of the stock car and made a continuous platform from the head of the inclined walk into the car over which stock could be driven. The railroad furnished gates so that the space between the heads of the inclined walk or chute to both sides of the car door opening could be enclosed. These gates inclosed a run-way approximately five feet wide, so that on the outside, either to the north or south of the gates, there would be a part of the sliding platform, extending from the stationary platform to the side of the stock car which could be used by a loader in driving livestock into the car.

Wood testified that immediately prior to the time of his injury he was standing on that part of the sliding platform extending to the north and outside of the gates, using a prodding stick to get his mules into the car. Had the sliding platform been of typical or standard construc-tion he would have had an area extending about three and a half feet northward, outside the gate, upon which to stand and move about. Wood's testimony as to the construction of the sliding platform conflicts sharply with that of appellant's witnesses. In view of the jury's findings, we must take Wood's version of the construction of the platform. He testified that the first two boards of the sliding platform to the east, the ones partially overlapping and nearest to the stationary platform, were of the length shown in a photograph introduced in evidence, that is, that they extended northward outside the gate a distance of three and a half feet; that the middle boards were eighteen inches shorter, reducing the northward extension outside the gate to two feet, and that the two boards next to the side of the car to the west were still shorter, it being inferable that the northward extension of these boards outside the gate was reduced to somewhere around nine inches or a foot.

Wood testified: "I had stepped up on this narrow place (the shortest boards) to poke the mules in the car, and when I got them all cleared, there was some more coming in that had balked down at the other end, and I started to step back to get around those mules and poke them into the car, and I stepped off into space." Wood testified that he had a "very good reason" for attempting to turn and go back the walkway outside the gate, as "some of the mules had balked down at the end of the chute and I was going around these mules and bring them up."

It is conceded that Wood had actual knowledge of the jogs or offsets in the sliding platform prior to the time he fell therefrom, although it is inferable that he momentarily forgot about them when he attempted to turn around and fell from the platform. Appellant does not, in his argument, attack the jury's finding that Wood was not guilty of contributory negligence. The question presented is whether the railroad company was guilty of conduct which created an undue risk of harm or injury to Wood and not whether Wood was guilty of conduct involving undue risk or harm to himself. Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625.

Assuming as we must that the sliding platform was in the condition and of the construction testified to by Wood, we think it clear that this particular platform was not as safe for use as one of the standard

144

or typical design described by appellant's witnesses. It had a small and irregularly shaped area upon which a loader could stand to perform his duties, as compared with the wider and uniform area provided by the standard platform. Further, considering the contemplated use of the device and the circumstances usually attendant upon such use, it seems that an accident similar to the one which actually occurred, could have and should have been foreseen and anticipated by the railroad company.

Primarily and essentially the sliding platform here involved was a device, or a piece of equipment, furnished by the railroad company for a business purpose in which both Wood and the railroad company were interested. The jury was warranted by the evidence in making the findings which lead to the conclusion that the device was unsafe for the intended use.

■ The rule, as set forth by the American Law Institute in its Restatement of the Law, Torts, Vol. 2, page 1064, is that: "One who supplies to another * * * a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied * * * for bodily harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied if the supplier has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied. * * *"

We believe that the rule above stated applies in this case. We are here dealing with a common carrier. Generally, an invitee using the carrier's equipment for a business purpose is under some economic compulsion to do so, that is, he must use the facilities furnished or discontinue his business enterprise. This circumstance seems to be the basis of the decision of the Kentucky Court of Appeals in White v. Cincinnati, N. O. & T. P. Ry. Co., 89 Ky. 478, 12 S.W. 936, 7 L.R.A. 44, which is nearer in point upon the facts than any other case we have been able to find. White was injured as a result of a defect in a platform similar to the sliding platform here involved. The trial court instructed the jury to find for the railroad company. Upon appeal the railroad company asserted the following proposition: "A party cannot recover for an accident occasioned by the use of a defective platform after he has seen the defects, had

his attention expressly directed to them, and 'knew its unsafe condition when he went on it.'" 7 L.R.A. 44.

The Court of Appeals held that "Knowledge of the unsafe condition of the platform provided by a carrier for loading stock will not prevent a person, attempting to use it for that purpose and exercising due care, from recovering for injuries received by reason of the defect." Syllabus 7 L.R.A. 44. The judgment of the trial court was reversed and the cause remanded.

■ Appellant's first point is overruled. See also Gulf, C. & S. F. R. Co. v. Gascamp, 69 Tex. 545, 7 S.W. 227; Walgreen-Texas Co. v. Shivers, supra; 9 Am.Jur. 642, § 353.

We are, however, of the opinion that appellant's fifth and sixth points present reversible error. The jury found that Wood had sustained damages in the sum of $6,500. Under the instructions of the court, the jury was authorized to consider physical and mental pain and suffering, doctor bills, "the reasonable value of earnings lost by" Wood "in the past," and his reduced earning capacity in the future. It appears probable that a large proportion of the damages awarded by the jury was based upon its estimate of loss of earnings from the date of injury to date of trial. Appellant contends that the trial court erroneously admitted evidence upon this item of recovery over its objection, and that such evidence is an insufficient basis for a finding as to the amount of earnings lost by Wood.

Wood was injured on March 2, 1940. At that time, according to his testimony, he was operating the Beeville Live Stock Commission Company. There is no testimony that he was interested in any other business enterprise. The extent and nature of the business of the Beeville Live Stock Commission Company is left a matter of conjecture and surmise by the testimony in the record. Practically nothing is disclosed as to the number of employees, if any. It may be inferred from the testimony that the company was engaged in a live stock commission business, that it conducted auctions of live stock, and that it bought and sold live stock. There is no evidence from which the number of transactions handled by the commission company, either before or after Wood's injury, can be estimated or the extent of gain therefrom calculated.

In answer to a question concerning the amount of money he was making prior to his injury, Wood stated: "I had the one auction going on here in Beeville—I expect about $300 a week." He further testified that: "It (the injury) made a great deal of difference in my earning capacity. * * * For the first ninety days it eliminated practically every bit of my earning capacity, and then increased— my capacity to earn has increased since my shoulder has gotten better to where I could work. * * * I was out $5,000, I think about $5,000, for the first three months." Wood, in answer to the direct question as to whether or not his earning capacity had been diminished because of his injury, stated: "I would say for about a year and two or three months—I would say at least $5,-000." Appellant objected to Wood's testimony as to the amount his earnings and earning capacity had been diminished as being a conclusion of the witness.

We quote the following from the cross-examination of Wood:

"Q. So you kept the Beeville Live Stock Commission Company for more than a year after this accident before you sold it? A. Yes, sir.

"Q. Who ran the business for you while you were in the hospital? A. I wasn't in the hospital.

"Q. While you had your arm in that case, who ran the business for you? A. I ran it myself.

"Q. You ran it yourself? A. Yes, sir. * * *

"Q. How much money did you make out of the Beeville Live Stock Commission Company in April, 1940? A. I wouldn't try to tell you. * * *

"Q. How much money did you make in May of 1940? A. I can't tell you.

"Q. How much money did you make the week before March 2, 1940? A. I wouldn't try to tell you that.

"Q. How much money did you make during the month of March, 1940? A. That would be kind of hard for me to say. * * *

"Q. How much money did you make in April, 1940? A. I wouldn't try to tell you.

"Q. How much money did you make in February, 1940? A. I wouldn't try to tell you that, either. * * *"

We do not understand that it is reversible error to admit a conclusion in the nature of a summary made by a non-expert witness, provided the facts upon which the summary or conclusion is based are in evidence. It is, however, well settled that a naked or unsupported conclusion of a witness will not support a jury finding. Webb v. Reynolds, Tex.Com.App., 207 S.W. 914; 17 Tex.Jur. 922, § 416. Wood was a party to this action and in view of his cross-examination we must hold that his estimate of the money damage sustained by him for loss of earnings as a result of his injuries is an unsupported conclusion and consequently insufficient to support the jury's finding awarding a recovery therefor. For a discussion of compensation by way of damages for injuries to one engaged in a business and evidence relative thereto, see 15 Am.Jur. 506, § 96, and 25 C.J.S., Damages, p. 617, § 86.

We sustain appellant's fifth and sixth points.

As this cause must be reversed, we briefly notice appellant's remaining assignments which might have some bearing upon a retrial of the cause. We need not discuss appellant's second and third points, wherein it is asserted that the jury's answers to certain specific issues are the result of passion or prejudice.

By its fourth point, appellant complains of the manner in which its requested special issues were submitted by the trial court. This was done by physically attaching to the court's main written charge the papers upon which four of appellant's special issues were written together with the requests for submission. It was recited in the request for each issue that the same was a "defendant's special requested issue." It is argued that this method of submission informs the jury of the legal effect of its answers and is consequently prejudicial to a defendant. While it can hardly be said that in all cases such a method of submission would have this effect, it seems that the preferable practice is to submit all issues made by the pleadings and the evidence in the same manner, that is, as issues submitted by the court, and not as issues submitted upon the request of either party. Under Rule No. 279, Texas Rules of Civil Procedure, the trial court is primarily charged with the duty of submitting all issues raised by the pleadings and the evidence in the case, and this duty is applicable alike to the plaintiff's or the defendant's issues. Rule 276, Rules of Civil Procedure, provides a

method for preserving a record of the trial court's action upon a requested special issue and does not prescribe the manner in which the trial court shall submit the issue to the jury.

There is no merit in appellant's seventh point. One of appellant's witnesses, O'Reilly, testified that the condition of the loading equipment of the railroad company was in substantially the same condition a year after Wood was injured (at the time some photographs were taken) as it was at the time of Wood's injuries. After laying a proper predicate, appellee sought to impeach O'Reilly by showing that about a week before the trial O'Reilly had stated to appellee's witness Christy that stock were loading easier at the loading pens and chutes here involved since the chute had been repaired. This testimony was properly admitted for impeachment purposes. From the statement attributed to O'Reilly it could have been inferred that repairs or changes in the loading devices and equipment had been made which were substantial in nature, so that the loading of stock was materially facilitated. We think, under the record here, Christy's testimony was admissible under the rule contended for by appellant, which is stated in Attorney General v. Hitchcock, 1 Exch. 99, and recommended by McCormick and Ray, Texas Law of Evidence, p. 424, § 339.

Appellant's eighth proposition is overruled. We do not believe the issue submitted inquiring in effect whether or not appellee was furnished a "reasonably safe" place for use in leading his livestock, was a mixed question of law and fact. The issue given was not subject to the objection directed against it.

We also overrule appellant's ninth point. Objection was made to the form of special issue No. 1, wherein the jury was asked whether or not the "loading chute" in question was narrower at one end than at the other, for the reason that the pleadings alleged that the walkway, that is the portion of the platform lying outside the gates, was narrower at one end than the other. While the submission was not strictly in accord with the pleading, we do not believe the jury was confused thereby. There was no evidence that any part of the loading chute and its appurtenances, other than the walkway, was narrower in one place than in another. This question, however, need not arise upon another trial.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded.

## On Motion for Rehearing.

Appellee has filed an able and vigorous motion for rehearing insisting that we erred in sustaining appellant's fifth and sixth points. Our original opinion states in substance all the testimony in the record upon the issue of appellee's "lost earnings." Appellee objects to our statement that "it appears probable that a large proportion of the damages awarded" was based upon this item. There is no substance in this complaint for it can not be said that the jury did not consider this item of "lost earnings" in arriving at its estimate of damage. The proportion of the sum of the judgment awarded by reason thereof, be it large or small, is not controlling. Upon the record, we can not apportion the amounts of the judgment to the various elements which the jury were instructed to consider in one issue inquiring as to the amount of damages. If the evidence does not support a recovery for "lost earnings," our order of reversal must stand.

Wood was engaged in business. He was not employed at a fixed or definite wage or salary.

We quote a part of § 96, 15 Am. Jur. 506, cited in our original opinion: "How far compensation for injury to one engaged in business may include the value of his services in such business must depend upon the nature and extent of the business, the amount of his personal direction and labor connected with the business, and the amount of capital invested and labor employed. * * *"

We construe appellee's statement that he was making "about $300 a week" prior to his injury as the statement of an inference or a conclusion, but if it be considered as a statement of fact, it could at most be construed as a statement that the profits from his business amounted to about $300 per week prior to his injury. However, it seems well settled that evidence showing a diminution of profits from a business does not in itself establish a measure of damages. 15 Am.Jur. 508, § 98.

From the authorities cited in our original opinion, it is apparent that under a construction of the testimony most favor-

able to appellee, he testified at most to but one of the numerous elements which must be taken into consideration in determining the amount of compensation to be paid for loss of earnings sustained by one engaged in the operation of a business.

Further, upon cross-examination, appellee could not, or did not, give any information by which his statement (that he had made $300 per week prior to his injury) could be verified or evaluated although pertinent inquiries were directed to him for that particular purpose. The sum total of appellee's testimony is this: I made $300 per week prior to my injury. My earning capacity was eliminated for ninety days. I am out $5,000. I can give you no further information about the matter.

We think that both the statement as to $300 a week earnings or profit and the $5,000 loss are essentially in the nature of inferences or conclusions supported by no disclosed adequate factual data. Upon appellee rested the burden of proving facts from which the jury can ascertain the proper amount of damages. This burden could not be shifted by appellee's testifying to unsupported conclusions. We adhere to our holding that appellant's fifth and sixth points present reversible error and appellee's motion for rehearing is overruled.