

NUMBER 13-11-00169-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

| | |
|---|---|
| **TONY DUSTIN PEREZ,** | **Appellant,** |
| **v.** | |
| **ANTONIO PEREZ AND**<br>**MARSHA PEREZ,** | **Appellees.** |

**On appeal from the 343rd District Court**
**of San Patricio County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Perkes**
**Memorandum Opinion by Justice Perkes**

Appellant Tony Dustin Perez ("Dustin") appeals the trial court's judgment entered

in favor of his parents, appellees Antonio and Marsha Perez.   After he fell and broke his

elbow at his parents' home, Dustin sued his parents, Antonio and Marsha Perez, and their

home insurer, State Farm Lloyds. Pre-trial, Dustin and his parents settled the liability portion of this suit. The jury subsequently awarded Dustin $7,400 in damages.[1]

By ten issues on appeal, Dustin argues: (1) the evidence is legally and factually insufficient to support the jury's allegedly "inadequate" award of damages for past and future physical pain and mental anguish, past and future physical impairment, and/or past loss of earning capacity; (2) the trial court erred when it denied his motion for judgment notwithstanding the verdict for damages, and in the alternative, when it denied his motion for new trial on the issue of damages; (3) the trial court erred by failing to, *sua sponte,* declare a mistrial during *voir dire* after potential jurors expressed "frustration" with the case; (4) the trial court erred by overruling his motions complaining of appellees' counsel's jury argument; (5) the trial court erred by submitting a mitigation of damages instruction in the jury charge; and (6) the trial court erred when it denied his motion for sanctions regarding a discovery dispute.[2] We affirm.

---

[1] Dustin's claims against the insurer were severed from the present suit.

[2] In their entirety, Dustin's ten issues are as follows: (1) the trial court should not have overruled plaintiff's motion for judgment notwithstanding the verdict because defendant Antonio Perez judicially admitted the elements and amounts of the damages sought by plaintiff; (2) there is no evidence to support the jury's finding of inadequate damages or failure to find damages for elements (a) through (d) and (f) and plaintiff conclusively established his damages as a matter of law; (3) the trial court should not have overruled plaintiff's motion for judgment notwithstanding the verdict because no evidence supports the jury's answers to damage elements (a) through (d) and (f) and a directed verdict would have been proper; (4) the jury's answers to damage elements (a) through (d) and (f) are so against the great weight and preponderance of the evidence of plaintiff's damages as to be clearly wrong and manifestly unjust so that plaintiff is entitled to a new trial; (5) the trial court should not have overruled plaintiff's motion for new trial because the jury's finding of inadequate damages for elements (a), (b) and (f) is contrary to the amounts proved by plaintiff; (6) the trial court should not have overruled plaintiff's motion for new trial because the jury's finding of "zero" damages for elements (c) and (d) is contrary to the great weight and preponderance of the evidence; (7) the trial court should not have submitted a "failure to mitigate damages" instruction over plaintiff's objection because it was harmful and not supported by the evidence; (8) the trial court should have, *sua sponte,* declared a mistrial during *voir dire* and should have granted plaintiff's motion for new trial when potential jurors expressed frustration with the plaintiff's case; (9) the trial court should not have overruled plaintiff's pre-and post-judgment motion complaining of defendants' counsel's improper, prejudicial and incurable jury argument; and (10) the trial court should not have overruled plaintiff's pre-trial

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

On November 26, 2006, Dustin broke his right elbow when he fell off a stepladder while he was putting Christmas lights on the roof of his parents' house. On December 6, 2006, an orthopedic surgeon, Dr. Charles S. Clark, Jr., surgically repaired the "olecranon process" of Dustin's elbow by using hardware to re-attach two elbow bones that were pulled apart as a result of the fall. Dustin recovered well and regained the full range of motion in his elbow. As of the time of trial, however, the plate and screws in his elbow had not yet been removed, and continued to cause some irritation. During the May 2010 trial, Dustin asserted that he did not feel it was his responsibility to pay for the hardware removal surgery out-of-pocket, and that he delayed the surgery, pending the outcome of this lawsuit. The evidence showed that this surgery would cost approximately $5,000.[4] The jury awarded Dustin the following damages:

| | |
|---|---|
| (a) Physical pain and mental anguish sustained in the past | $ 2,000.00 |
| (b) Physical pain and mental anguish in the future | $ 100.00 |
| (c) Physical impairment in the past | $ 0.00 |
| (d) Physical impairment in the future | $ 0.00 |
| (e) Medical expenses in the future | $ 5,000.00 |
| (f) Loss of earning capacity in the past | $ 0.00 |

verified amended motion for sanctions.

[3] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[4] The parties' stipulation shows that the insurer paid the sum of $23,120.44 for Dustin's past medical expenses, and that the sum of $4,535 was the estimated amount for future medical expenses regarding the hardware's surgical removal and rehabilitation. The stipulation was admitted into evidence.

(g) Loss of earning capacity in the future                                    $        300.00

The trial court entered judgment on the jury's verdict, awarding Dustin $7,400 in damages, plus pre- and post-judgment interest and court costs.   The trial court overruled Dustin's motion for judgment notwithstanding the verdict in which Dustin argued that his father's testimony agreeing to specific damage amounts constituted a judicial admission regarding such damage amounts, as a matter of law.   The trial court also overruled Dustin's motion for new trial in which he challenged the sufficiency of the evidence, error in the court's charge, and improper jury argument.   This appeal followed.

## II.  ANALYSIS

## A.    Did Antonio Judicially Admit Dustin's Non-Economic Damages?

By his first issue, Dustin argues the trial court should have granted his motion for judgment notwithstanding the verdict because his father, Antonio, "judicially admitted each element of plaintiff's damages."   Dustin contends that Antonio made judicial admissions when he testified that, based on his personal observations and what he had seen, the following dollar amounts would be fair and reasonable amounts for damages: $126,000 for past physical pain and mental anguish; $50,000 for future physical pain and mental anguish; $10,000 for past physical impairment; $5,000 for future physical impairment; and $3,600 for past loss of earning capacity.   We disagree.

The standard of review for a trial court's denial of a motion for judgment notwithstanding the verdict is to determine whether the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law.   *Rapp v. Mandell & Wright, P.C.*, 127 S.W.3d 888, 894 (Tex. App.—Corpus Christi 2004, pet. denied) (citing *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991)); *Oyster*

*Creek Fin. Corp. v. Richwood Inv. II, Inc.*, 176 S.W.3d 307, 322 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).   If that is true, then the trial court erred in denying the motion for judgment notwithstanding the verdict.   *Rapp*, 127 S.W.3d at 894; *Oyster Creek Fin. Corp.*, 176 S.W.3d at 322.

A judicial admission is a formal waiver of proof, usually found in the pleadings or stipulations of the parties, that dispenses with the production of evidence on an issue and bars the admitting party from disputing it.   *DowElanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App.—Corpus Christi 1999, no pet.); *see also Sherman v. Merit Office Portfolio, Ltd.*, 106 S.W.3d 135, 140 (Tex. App.—Dallas 2003, pet. denied).   As long as the statement stands unretracted, it must be taken as true by the court and jury; it is binding on the declarant, and the declarant cannot introduce evidence to contradict it.   *Sherman*, 106 S.W.3d at 140.   It is the nature of an admission that by intention it be an act of waiver, and not merely a statement of assertion or concession, made for some independent purpose.   *Id.* (citing *U.S. Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 228 (Tex. Civ. App.—San Antonio 1951, writ ref'd)).   In this regard, "[m]ere testimony, though it come[s] from a party, is not by intention an act of waiver.   A witness is not selling something or giving something away, but simply reporting something.   The testimony of parties to a suit must be regarded as evidence, not as facts admitted."   *Carr*, 242 S.W.2d at 228 (internal quotation omitted); *see also Reardon v. LightPath Techs. Inc.*, 183 S.W.3d 429, 437 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (concluding witness's testimony about valuation of corporate shares was not a judicial admission).

The Texas Supreme Court has held that a party's testimonial declarations that are

contrary to his position may be quasi-admissions and, generally, treated merely as some evidence. *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). The weight to be given quasi-admissions is to be decided by the trier of fact. *Id.* A quasi-admission will be treated as a judicial admission if it appears that the following conditions are satisfied: (1) the declaration relied upon was made during the course of a judicial proceeding; (2) the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony; (3) the statement is deliberate, clear, and unequivocal; (4) the giving of conclusive effect to the declaration will be consistent with the public policy upon which the rule is based; and (5) the statement is not also destructive of the opposing party's theory of recovery. *Id.*

To rely on a judicial admission, a party must timely object to the submission of a jury question on the issue that is the subject of the judicial admission; in other words, a party must object to asking the jury to decide a question that has already been judicially admitted and instead must rely on the judicial admission. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983); *see also Sherman*, 106 S.W.3d at 140 ("[w]hile a judicial admission relieves the opposing party's burden of proving the admitted fact and bars the admitting party from disputing it, a judicial admission does not excuse the opposing party from having to preserve error."). Further, a party that seeks to rely on a judicial admission must protect the record by objecting to the introduction of controverting evidence on the ground that there has been a judicial admission. *See Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

6

Dustin first raised his argument that Antonio's testimony was a judicial admission after the jury reached its verdict. The record shows that after Antonio made the alleged judicial admissions on Dustin's counsel's direct-examination, Antonio's counsel cross-examined him regarding, and admitted evidence concerning, three of Dustin's tax returns and various medical records, in an effort to controvert Dustin's damage claims. For example, the tax returns contradicted Dustin's claim that he lost income as a result of his elbow injury, and the medical records controverted the amount of Dustin's damage claims. Dustin, however, did not object to the introduction of this evidence on judicial admission grounds, and Dustin did not object to submitting the allegedly judicially admitted damage issues during the jury charge conference.

On this record, even assuming for the sake of argument that Antonio's testimony amounted to a judicial admission regarding various damage amounts, Dustin failed to preserve his right to rely on the admission by failing to object to subsequent controverting evidence, and by failing to object to the jury charge which submitted jury questions regarding such damages. *See Musick*, 650 S.W.2d at 769; *Sherman*, 106 S.W.3d at 140. Dustin's first issue is overruled.

**B.    Is The Evidence Sufficient To Support The Jury's Damage Awards?**

By his second and third issues, Dustin argues the trial court erred by overruling his motion for judgment notwithstanding the verdict because the evidence conclusively established the damage amounts for elements (a) through (d) and (f), and because there is no evidence to support the jury's findings on such damage elements. By his fourth through sixth issues, Dustin argues the trial court erred by overruling his motion for new trial because the jury's damage amounts for elements (a) through (d) and (f) are against

7

the great weight and preponderance of the evidence; the jury's findings for elements (a), (b), and (f) are inadequate and contrary to the amounts proved; and the jury's findings of "zero" damages for elements (c) and (d) are contrary to the great weight and preponderance of the evidence. The challenged damage elements are as follows: (a) physical pain and mental anguish sustained in the past; (b) physical pain and mental anguish that, in reasonable probability, Dustin will sustain in the future; (c) physical impairment sustained in the past; (d) physical impairment that, in reasonable probability, Dustin will sustain in the future; and (f) loss of earning capacity sustained in the past. Appellant carried the burden of proof on each of these issues.

**(1)    *Standards of Review***

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241(Tex. 2001); *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); Hall, *Standards of Review in Texas*, 29 ST. MARY'S L.J. 351, 481-82 (1998). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co.,* 46 S.W.3d at 241; *Sterner*, 767 S.W.2d at 690. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* The point of error should be sustained only if the contrary proposition is conclusively established.

*Dow Chemical Company*, 46 S.W.3d at 241; *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.,* 46 S.W.3d at 242; *Croucher*, 660 S.W.2d at 58; Hall, 29 ST. MARY'S L.J. *at 485.* The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem.Co.*, 46 S.W.3d at 242; *see Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011).

Physical impairment and physical pain and mental anguish are overlapping categories of damages. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 770 (Tex. 2003). When the appellant raises a factual sufficiency challenge to the jury's failure to find greater damages in more than one overlapping category, we first determine if the evidence unique to each category is factually sufficient. *Id.* at 775. If it is not, we consider all of the overlapping evidence, together with the evidence unique to each category, to determine if the total amount awarded in the overlapping categories is factually sufficient. *Id.* We will reverse for factual insufficiency only if we conclude, after examining the evidence in a neutral light, that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate bias. *Id.* at 761.

**(2)**   *The Jury Charge*

We begin by examining the jury charge to identify the evidence that is pertinent to our analysis.   *See id.*, 116 S.W.3d at 762; *see also Figueroa v. Davis*, 318 S.W.3d 53, 58 & 62-63 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Belford v. Walsh*, No. 14-09-00825-CV, 2011 WL 3447482, at *2 (Tex. App.—Houston [14th Dist.] Aug. 9, 2011, no pet.) (mem. op.).   In pertinent part, the jury charge read as follows:

> What sum of money, if paid now in cash, would fairly and reasonably compensate Tony Dustin Perez for his injuries, if any, that resulted from the occurrence in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately.   Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss.   That is, do not compensate twice for the same loss, if any.   Do not include interest on any amount of damages you find.
>
> Answer separately, in dollars and cents, for damages, if any.   Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Tony Dustin Perez.
>
> Do not include any amount for any condition resulting from the failure, if any, of Tony Dustin Perez to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating his injuries.
>
> a.  Physical pain and mental anguish sustained in the past.
>
>    Answer:  2, 000.00
>
> b.  Physical pain and mental anguish that, in reasonable probability, Tony Dustin Perez will sustain in the future.
>
>    Answer:  100.00
>
> c.  Physical impairment sustained in the past.
>
>    Answer:  0.00

10

d. Physical impairment that, in reasonable probability, Tony Dustin Perez will sustain in the future.

Answer: 0.00

e. Medical care expenses that, in reasonable probability, Tony Dustin Perez will sustain in the future.

Answer: 5,000.00

f. Loss of earning capacity sustained in the past.

Answer: 0.00

g. Loss of earning capacity that, in reasonable probability, Tony Dustin Perez will sustain in the future.

Answer: 300.00

As set forth above, the jury was instructed to consider each element of damages separately and not to "award any sum of money on any element if" it had "otherwise, under some other element, awarded a sum of money for the same loss." The jury charge contains no definition of the terms used in the damage categories "physical pain and mental anguish," "physical impairment," and "loss of earning capacity," and no party objected to the lack of such definitions. We summarize the evidence in the record concerning Dustin's physical pain, mental anguish, physical impairment, and loss of earning capacity.

**(3)** *The Damages Evidence[5]*

**a.** *Dr. Clark's Testimony*

Dr. Clark testified that he first saw Dustin as a patient on November 27, 2006, the day after Dustin's fall. Dr. Clark testified that Dustin was in pain when he examined him

---

[5] Three witnesses testified at trial: Dr. Clark, Dustin, and Dustin's father, Antonio.

because his elbow bone was broken and there was "a void" or "palpable defect" where two of Dustin's bones had been pulled apart. Dr. Clark, however, also testified that in layman's terms he would not describe Dustin's injury as a "bad fracture" because the fracture could be repaired by moving the two bones back together and attaching them to one another, using hardware, until they healed. Dr. Clark described that to regain his right-arm function, Dustin needed two bones to be "put back together" using hardware.

Dr. Clark performed the surgery on December 5, 2006. He has seen Dustin five times since the surgery. Dr. Clark testified that Dustin recovered "extremely well" and "was a good patient." He estimated that a month or less after the operation, he sent Dustin to physical therapy to work on maintaining his range of motion in the right arm while the arm healed. As of his May 10, 2007 visit, Dr. Clark noted that Dustin had regained "almost full range of motion" and that Dustin informed him that he had "no pain or symptoms referable to the elbow." At this time, the fracture was completely healed and Dustin's elbow was in excellent position. Dr. Clark released Dustin to resume his full scope of activities.

In the years that passed between Dustin's surgery and the time of trial, Dr. Clark did not see any permanent damage to Dustin's elbow as a result of the accident. Dr. Clark described the possibility of any future complications with the elbow as a "big if" and remarked that Dustin "has done extremely well." The only future medical requirement he envisioned for Dustin's arm was elective hardware removal.

Dr. Clark described "it is relatively common" for a patient to seek hardware removal because the plates and screws can cause irritation with the arm. Dr. Clark testified that

12

any discomfort Dustin might complain of at the time of trial could be attributable to the hardware that had not been removed from his elbow. Dr. Clark testified that he could perform the hardware removal surgery any time Dustin chose and that the operation would cost $4,535, plus $200 for a follow-up visit with Dr. Clark and possible incidental costs.[6] After the hardware-removal operation, Dustin would need to wear a protective splint for a couple of weeks, but could return to work after just one week off. Dr. Clark testified that Dustin would feel fully recovered about three months after the hardware removal, and that a priority would be protecting the vulnerable drill holes in Dustin's arm until they recalcified. One year after the hardware removal, the soft tissue in Dustin's arm would be fully healed.

### b. *Antonio's Testimony*

Dustin called his father, Antonio, as an "adverse witness"[7] to testify concerning Dustin's damages. Antonio was present when Dustin fell at Antonio's house. Dustin was in terrible pain after the accident, and prior to Dustin's operation, Dustin took pain medication for his elbow. Post-surgery, Dustin used pain medication at times. Antonio testified that this could explain why Dustin's reports of post-operative pain were minimal. Antonio added Dustin is not someone who complains when he is in pain.

---

[6] Appellees Antonio and Marsha include a "cross issue" in their brief by which they argue that the trial court should have granted them judgment notwithstanding the verdict awarding Dustin only $4,535 in future medical expenses, instead of $5,000, because the lesser amount is supported by a stipulation between the parties and the evidence. However, the record does not show Antonio and Marsha filed a notice of appeal and absent a notice of appeal, their "cross issue" is not properly before this Court and we do not consider it. *See* TEX. R. APP. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal. Parties whose interests are aligned may file a joint notice of appeal. The appellate court may not grant a party who does not file a notice of appeal more favorable relief than did the trial court except for just cause.").

[7] We note that while Antonio was an adverse witness because he was a defendant in this case, the record does not reflect that he was a hostile witness on direct-examination by Dustin's counsel.

Antonio owns a used car lot and Dustin works for him. Dustin's primary work is collections and the recovery and transportation of cars for the car lot. He also sometimes sells cars. In addition to working for his dad, Dustin started his own side business called "Dash Recovery" which does towing and repossession work. Antonio said that Dustin has a "very good job," and conceded that Dustin has made more money every year since this accident and that money is not something Dustin lost as a result of his injury.

Antonio testified that Dustin should be compensated for his injuries in the following amounts: $4,532 for future surgery, $3,600 for past lost earning capacity because according to Antonio, Dustin missed three months of work at $300 per week pay; $126,000 for past pain and mental anguish; $50,000 for future pain and mental anguish; $10,000 for past physical impairment; $5,000 for future physical impairment. Antonio's figures total $199,432 in damages payable to Dustin. Antonio explained that Dustin was waiting for a recovery in this lawsuit to pay for his future hardware-removal surgery. As to past physical impairment, Antonio testified that Dustin was required to buy a more automated wrecker truck because of his injury; however, he agreed on cross-examination that Dustin's new "sneaker" truck was also beneficial because it was faster to operate. As to future physical impairment, Antonio believed $5,000 was justified because, as Antonio understood, Dr. Clark testified that Dustin's condition would not improve with the future surgery for hardware removal.

On cross-examination, Antonio testified that Dustin works out at Gold's Gym five times per week. Antonio described Dustin as a physically strong person. After this

14

lawsuit commenced, Dustin was able to increase from bench pressing 225 pounds (at 8 repetitions) to bench pressing closer to 400 pounds; however, Dustin was afraid to "max out" in his weightlifting because of his injury. Dustin's income-tax returns for 2005, 2006, and 2007, were admitted into evidence during defense counsel's cross-examination of Antonio. He conceded on cross-examination that the tax returns did not show that Dustin lost $3,600 in wages after this injury. In view of the tax returns, Antonio also conceded that as of income-tax year 2006, Dustin had not yet started his repossession business. He said that Dustin had to do lighter-duty work at the car lot when his arm was injured even though his pay remained constant as reflected in Dustin's tax returns.

c.      *Dustin's Testimony*

Dustin testified that when he broke his elbow "it kind of sounded and felt like gravel," and that he was in "a lot of pain" even when he took pain medication. For a time, he did not know what the outcome of his elbow injury would be. After his operation, Dustin wore a splint for one month and could only move his right elbow an inch or two back and forth. Dustin testified that as a result of the injury, he lost about three months of work time. He bought the "sneaker lift" wrecker truck because he was unable to operate his hook-and-sling truck as well because of this injury. Dustin testified that prior to his fall he could bench press 400 pounds, but that since his injury he has gone from bench pressing zero to 225 pounds and more. He is still not bench pressing as well he was prior to his injury, and he is still experiencing arm pain when he lifts weights. Dustin described his range of motion as normal, but testified that the plate and screws in his arm still bother him. Dustin testified that he wanted to have the hardware removed earlier,

but that he did not feel that it was his responsibility to pay for the hardware-removal surgery. Dr. Clark first told him about the hardware-removal surgery in May 2007, three years before trial. Dustin testified that he will miss a week of work for the surgery.

On cross-examination, Dustin agreed that his tax returns do not show that he lost any income after his injury. Dustin testified that he started his repossession business in 2007, and that he had to delay its commencement for six months because of his injury. Dustin agreed that as of May 10, 2007, he told Dr. Clark that he had no arm pain and no further symptoms regarding his injured elbow. At his June 30, 2009 deposition, however, he stated that he still has severe, constant pain in his elbow as a result of his fall. Dustin testified at trial that the difference in pain levels was attributable to whether or not he was using a sling; he has less pain when his elbow is in a sling.

**(4)** *Sufficiency of the Evidence*

**a.** *Past and Future Physical Pain and Mental Anguish*

The jury awarded Dustin $2,000 for past physical pain and mental anguish and $100 for future pain and mental anguish.

Physical pain may be established by circumstantial evidence and the duration of the pain is an important consideration. *Figueroa v. Davis*, 318 S.W.3d 53 at 62 (citing *HCRA of Tex., Inc. v. Johnston*, 178 S.W.3d 861, 871 (Tex. App.—Fort Worth 2005, no pet.). The fact finder is given a great deal of discretion in awarding an amount of damages it deems appropriate for pain and suffering. *Id.* at 62–63.

Dustin testified that he was in great pain after his fall, particularly before the first surgery. His elbow felt like gravel and even hurt when he took pain medication. For a

16

time, he did not know how things would turn out. Post-surgery, he recovered well, and by May 2007, Dustin reported to Dr. Clark that he had no symptoms or pain referable to his elbow. Antonio testified that the pain medication helped Dustin, and that the use of pain medication could account for Dustin's minimal complaints of pain post-surgery. Dr. Clark testified there was no permanent damage to Dustin that he saw. While Dustin reported some irritation and pain at the time of trial, Dr. Clark attributed the pain to the hardware in Dustin's arm which could be removed in the future. The record shows that Dustin postponed the hardware-removal surgery pending this litigation.

The record shows that Dustin was able to alleviate his pain using pain medication. The jury could consider this in evaluating his compensation. *See Belford*, 2011 WL 3447482, at *11. While the jury's award for future pain and mental anguish is modest, the record shows that Dustin has the certainty of a strong, positive prognosis and that the hardware-removal surgery is a relatively minor operation, from which he can return to work after one week. On this record, we cannot conclude that the evidence is legally or factually insufficient to support the jury's verdict on the elements of past and future physical pain and mental anguish.

**b.** ***Past and Future Physical Impairment***

The jury awarded Dustin zero damages for past and future physical impairment. In *Golden Eagle Archery*, the Supreme Court of Texas opined, as follows:

> We are persuaded that in the proper case, when the evidence supports such a submission, loss of enjoyment of life fits best among the factors a factfinder may consider in assessing damages for physical impairment. Indeed, if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of

17

life. Accordingly, if "physical impairment" is defined for a jury, it would be appropriate to advise the jury that it may consider as a factor loss of enjoyment of life. But the jury should be instructed that the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity and that a claimant should not be compensated more than once for the same elements of loss or injury.

*Golden Eagle Archery*, 116 S.W.3d at 772.

Dr. Clark testified that he released Dustin back to full activity. The record shows that by May 2007, less than six months after the operation to repair his elbow, Dustin reported to Dr. Clark that he had no elbow pain or symptoms related to his elbow injury. Although Antonio and Dustin presented controverting evidence that Dustin could not lift as much weight as before his injury, that he required a more automated tow truck, and that the hardware in his arm irritated him at times, it was within the province of the jury to assess the credibility of the witnesses and to resolve any conflicts in the evidence. Further, Dustin and Antonio's testimony did not describe physical impairment beyond pain, suffering, and mental anguish. Under the evidence, the jury could have reasonably determined that Dustin did not suffer compensable physical impairment that was not already compensated by the other categories. *See id.* at 773. On this record, we cannot conclude that the evidence was legally or factually insufficient to support the jury's zero damage award for past and future physical impairment.

### c. Past Loss of Earning Capacity

The jury awarded Dustin zero damages for past loss of earning capacity. This type of damages is the plaintiff's diminished earning power or earning capacity in the past directly resulting from the injuries sustained. *Strauss v. Cont'l Airlines, Inc.*, 67 S.W.3d

18

428, 435 (Tex. App.—Houston [14th Dist.] 2002, no pet.). Recovery for loss of earning capacity is not based on the actual earnings lost, but rather on the loss of capacity to earn money. *Id.* (citing *Brazoria County v. Davenport,* 780 S.W.2d 827, 832 (Tex. App.—Houston [1st Dist.] 1989, no writ)).

In order to support a claim of lost earning capacity, the plaintiff must introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so. *Id.* (citing *Bonney v. San Antonio Transit Co.,* 160 Tex. 11, 17, 325 S.W.2d 117, 121 (1959)). Although the amount of damages resulting from impairment of a plaintiff's earning capacity is largely within the discretion of the jury, a jury should not be left to mere conjecture when facts appear to be available upon which the jury could base an intelligent answer. *Id.* The naked or unsupported conclusion of a witness will not support a jury finding. *Id.* (citing *Tex. & N.O.R. Co. v. Wood*, 166 S.W.2d 141, 145 (Tex. Civ. App.—San Antonio 1942, no writ)). The injured party is required to introduce sufficient evidence which enables the jury to reasonably measure earning capacity prior to the injury. *Id.* at 436 (citing *King v. Skelly*, 452 S.W.2d 691, 693 (Tex.1970); *City of Houston v. Howard*, 786 S.W.2d 391, 395–96 (Tex. App.—Houston [14th Dist.] 1990, writ denied)).

In determining what evidence is sufficient to support a claim of loss of earning capacity, no general rule can be laid down, except that each case must be judged upon its peculiar facts, and the damages proved with that degree of certainty of which the case is susceptible. *Id.* The required certainty will necessarily vary. *Id.* When the plaintiff is employed at a fixed wage or salary, the amount of his previous earnings ordinarily must

19

be shown. *Id.* When the plaintiff seeks special damages for loss of earning capacity in a particular business, the amount of his earnings or the value of his services in that business must be shown with reasonable certainty. *Id.* The certainty of the proof required is also affected by the nature of the plaintiff's injuries. *Id.* Thus, if the plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of his loss can best be shown by comparing his actual earnings before and after his injury. *Id.*

Although Antonio and Dustin testified Dustin lost $3,600 in wages as a result of missed work attributable to Dustin's elbow injury, that claim was not supported by a comparison of his pre- and post-injury tax returns, which showed no lost income. Dustin testified that he delayed starting his repossession business for six months because of this injury, and that he ultimately started it in 2007. However, no evidence was offered in support of this assertion. The record shows that Dustin's new wrecker business was successful. Antonio testified, in reference to the period of time after the injury, that Dustin maintained "a very good job." Antonio also testified unequivocally that money was not something that Dustin lost as a result of this injury. On this record, we cannot conclude that the evidence is legally or factually insufficient to support the jury's verdict for past loss of earning capacity.

### d. *Summary*

We conclude that there was legally and factually sufficient evidence to support all of the jury's challenged findings on damages. *See Golden Eagle Archery*, 116 S.W.3d at 773; *see also Figueroa*, 318 S.W.3d at 66. Dustin's second through sixth issues are overruled.

20

**C.      Should Trial Court Have Declared A Mistrial *Sua Sponte* During Voir Dire?**

By his eighth issue, Dustin argues that the trial court abused its discretion by failing to declare a mistrial *sua sponte* during voir dire, after several venire members expressed frustration at the prospect of serving at a trial between parents and their son.   In the alternative, Dustin argues that his motion for new trial should have been granted on this basis.   While none of the venire members that Dustin references mentioned insurance, Dustin argues on appeal that had the trial court not ruled pre-trial that it would instruct the jury not to consider the existence or non-existence of insurance in the case, the venire members in question would not have expressed frustration in front of the entire jury panel. For example, one venire member stated the case seemed "like a scam" and another questioned why a jury was being asked to get involved in a family situation.

The record reflects that during the pre-trial hearing, the trial court sustained Dustin's parents' motion in limine to prohibit the jury from considering insurance.   At the pre-trial hearing, Dustin's counsel argued that Texas Rule of Evidence 411 barred evidence of insurance as it related to liability, but that the rule did not apply to this case because the parties reached a stipulation concerning liability.   *See* TEX. R. EVID. 411.   In sustaining the motion in limine, the trial court stated that pursuant to a local rule, the jury would be instructed not to consider, discuss, or speculate as to whether any party is or is not protected in whole or in part by insurance of any kind.

Prior to and during jury selection, Dustin never raised the argument he raises on appeal, that insurance evidence was necessary and relevant for the jury's consideration and understanding of the alignment of the parties.   *See* TEX. R. APP. P. 33.1 (requiring a timely, specific complaint in the trial court to preserve an issue for appellate review); *see*

21

*also Wackenhut Corrs. Corp. v. de la Rosa*, 305 S.W.3d 594, 616 (Tex. App.—Corpus Christi 2009, no pet.) (explaining argument on appeal must comport with objection raised in the trial court or error is waived). On appeal, Dustin cites no legal authority that states that the trial court has a duty to declare a mistrial *sua sponte* under these circumstances. *See* TEX. R. APP. P. 38.1(i). Apart from arguing against the motion in limine under Rule 411, Dustin never raised any complaint about the exclusion of insurance once voir dire commenced, and it is well established that an adverse ruling on a motion in limine is insufficient to preserve a complaint for appellate review. *See Chavis v. Dir., State Worker's Comp. Div.*, 924 S.W.2d 439, 446 (Tex. App.—Beaumont 1996, no writ). Dustin's eighth issue was not preserved for review and is overruled.

## D.    Was Defense Counsel's Jury Argument Improper?

By his ninth issue, Dustin argues that the trial court should have granted him a new trial because defense counsel improperly argued during closing argument that the jury could disbelieve his client, Antonio's testimony. We disagree.

A party preserves error for allegedly improper jury argument or sidebar comments by timely objecting to the complained-of comments and obtaining an adverse ruling on the objection. *See Living Ctrs. Of Tex., Inc. v. Penalver,* 256 S.W.3d 678, 680 (Tex. 2008); *see also Lesikar v. Moon*, No. 14-11-01016-CV, 2012 WL 3776365, at *10 (Tex. App.—Houston [14 Dist.] Aug. 30, 2012) (mem. op.). Generally, retraction of the argument or an instruction from the trial court can cure probable harm, but in rare instances in which the argument is incurable, a party may complain on appeal about the argument even without a timely objection. *Penalver*, 256 S.W.3d at 680. Reversal is proper upon a showing that "the probability that the improper argument caused harm is

greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Standard Fire Ins. Co. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979); *see also Moon*, 2012 WL 3776365, at *10.

During closing argument (spanning nearly ten pages of the record), defense counsel twice argued that it was the jury's role to determine the credibility of the witnesses, including Dustin and Antonio. Specifically, defense counsel argued:

> And what I want to do is—you have the charge there in front of you, and I want to go back with you to the very first part of this charge. The second sentence the Judge tells you that you are the sole judges of the credibility of the witnesses and the weight to be given to their testimony. We talked about that yesterday. And what that means is this: It's up to you to decide what you believe. The fact that Dustin Perez said something, the fact that Tony Perez said something that doesn't sound right to you, you don't have to believe it. That's why you're here.
>  . . .
> We have gone back to that same word that we talked about yesterday, credible. And the reason I keep harping on that is this: Is because ultimately 12 of you are going to be the people that are going to decide what is right and what is wrong. That is your job. And if there was something that was said either by Mr. Dustin Perez or Mr. Tony Perez that you just go, you know that, that just doesn't sound right, that just doesn't make any sense, then under what the definition of the Judge has given you there you have the right, as a juror, to say I'm not buying it. You don't have to answer those blanks the way that Mr. LeGrand did on that exhibit just because somebody said that. That is going to be your call. And it's going to have to be based upon the credible evidence.

Dustin did not assert an objection to any of these comments. Therefore, Dustin must show that the comments constituted incurable jury argument. *See Jones v. Republic Waste Servs. of Tex ., Ltd.*, 236 S.W.3d 390, 402 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). When an argument is so inflammatory that its harmfulness could not be eliminated by an instruction to the jury to disregard, the prejudicial nature of the argument is so acute that the comment is incurable. *Otis Elevator Co. v. Wood,* 436

23

S.W.2d 324, 333 (Tex.1968); *see also Moon*, 2012 WL 3776365, at *10. We examine all the circumstances surrounding the making of the statements to determine if the comment was so inflammatory that its perceived prejudicial effect could not have been cured by an instruction. *See Standard Fire Ins. Co.*, 584 S.W. 2d at 839–40. Rarely will an improper argument so prejudicially influence the jury that error cannot be cured. *See Living Ctrs. of Tex., Inc.*, 256 S.W.3d at 680.

Defense counsel's comments were proper statements of the law, and at worst, assuming for the sake of argument only that the comments were improper, any harm was curable. *See Jones,* 236 S.W.3d at 403. Texas Rule of Evidence 607 provides, "the credibility of a witness may be attacked by any party, including the party calling the witness." TEX. R. EVID. 607. In this case, defense counsel's closing argument accurately explained the law under which it was the jury's role to determine the credibility of the witnesses. The two comments were brief in duration and each time, defense counsel commented on the jury's role in assessing the credibility of both Dustin and Antonio's testimony.

We cannot conclude the comments were so inflammatory that their perceived prejudicial effect would have prevented the members of the jury from following their oaths with proper instructions from the trial judge. *See Jones* at 403-04. Dustin's ninth issue is overruled.

**E.     Was A Jury Instruction On Failure To Mitigate Damages Improper?**

By his seventh issue, Dustin argues that the trial court erred by instructing the jury, over his objection, on the failure to mitigate damages. Dustin argues that the jury instruction was not supported by the pleadings or evidence. We disagree.

We review a trial court's decision to submit a jury instruction for an abuse of discretion. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). Trial courts have considerably more discretion in submitting jury instructions than in submitting jury questions. *Harris v. Harris*, 765 S.W.2d 798, 801 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

The Supreme Court has held that a party's failure to mitigate damages by treatment of personal injuries is not an affirmative defense and does not have to be specifically pleaded to allow the admission of evidence on the issue and entitle an opposing party to an instruction on the issue. *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444, 448 (Tex. 1967); *see also Harris County v. Smoker*, 934 S.W.2d 714, 721 (Tex. App.—Houston [1st Dist.] 1996, writ denied). Evidence on the issue of mitigation of damages is admissible under a general denial. *Smoker*, 934 S.W.2d at 721 (citing *Greater Fort Worth & Tarrant County Cmty. Action Agency v. Mims*, 627 S.W.2d 149, 151 (Tex. 1982)). Therefore, the issue of mitigation was sufficiently raised by the pleadings of general denial in this case.

A trial court may refuse to submit an instruction only if no evidence exists to warrant its submission. *See Id.* (citing *Elbaor v. Smith*, 845 S.W.2d 240, 240 (Tex. 1992)); *see also* Tex. R. Civ. P. 277, 278. The mitigation of damages doctrine requires an injured party to exercise reasonable care to minimize its damages, if the damages can be avoided with only slight expense and reasonable effort. *Smoker*, 934 S.W.2d at 721 (citing *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.1995); *City of San Antonio v. Guidry*, 801 S.W.2d 142, 151 (Tex. App.—San Antonio

25

1990, no writ)).   In *Moulton*, the Supreme Court noted that an instruction on mitigation of damages is appropriate when there is evidence of negligence on the part of a plaintiff in: (1) not consulting a doctor; (2) not consulting a doctor as soon as a reasonable person would; (3) not following a doctor's advice; or (4) not properly caring for and treating injuries that do not require the attention of a doctor.   *Id.* (citing *Moulton*, 414 S.W.2d at 450).   However, the party who caused the loss bears the burden of proving lack of diligence on the part of the plaintiff, and the amount by which the damages were increased by the failure to mitigate. *Id.*   (citing *Cocke v. White,* 697 S.W.2d 739, 744 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.)).

The evidence shows that Dr. Clark told Dustin three years prior to trial that he could have had the hardware removed from his elbow at any time, but that as of the time of trial Dustin had still elected not to do so.   The surgery would have cost just over $4,000 and Dustin's business was prosperous during this time frame.   Dr. Clark saw no permanent damage to Dustin's arm as a result of his injury or the first surgery, and Dustin reported that he had no post-surgical pain or symptoms.   The evidence further shows that Dr. Clark fully released Dustin from any restrictions in using his arm, and that Dr. Clark attributed any subsequent pain or irritation to the removable hardware in Dustin's arm. Dr. Clark testified that it is common for patients to seek hardware removal, and that Dustin could expect a full recovery following the removal.

The record provides some basis on which the jury could determine that Dustin would not have experienced the pain and irritation for the three years leading up to trial, had he opted to have the hardware-removal surgery sooner.   We cannot conclude the

26

trial court abused its discretion by instructing the jury on the failure to mitigate damages. *See id.* Dustin's seventh issue is overruled.

## F. Should Trial Court Have Granted Dustin's Pre-Trial Motion For Sanctions?

By his tenth issue, Dustin argues that the trial court abused its discretion by denying his pre-trial "Verified Amended Motion for Sanctions." We disagree.

We review a trial court's denial of a motion for sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *see also* TEX. R. CIV. P. 215.4(b). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 839.

In his motion for sanctions, Dustin sought $6,268.90 in attorney's fees and expert witness's fees based on Antonio's counsel's written answers to requests for admissions. *See* TEX. R. CIV. P. 198. The record shows that Antonio "denied" multiple requests for admissions, but that during his deposition he testified he would have "admitted" the same requests for admissions had defense counsel shown him the requests. Dustin argued that defense counsel's failure to amend the written answers after Antonio's deposition required him to hire an expert witness on the issue of whether Dustin was contributorily negligent when he fell from the ladder at Antonio's house and suffered his injury.

The trial court held a lengthy hearing on Dustin's motion for sanctions. During the hearing, defense counsel explained that he answered the requests for admissions on the basis of a conversation he had with Antonio about the facts of the case. Defense counsel cited numerous passages of deposition testimony that supported "denials" contained in the responses. Defense counsel also cited evidence that prior to the parties entering a stipulation regarding liability, Dustin's contributory negligence was in issue

27

because evidence showed Dustin was standing on the top two steps of the ladder, above a "Do Not Stand Above This Step" marker, at the time of his fall.

On this record, we cannot say the trial court abused its discretion when it denied Dustin's motion for sanctions.  *See Cire*, 134 S.W.3d at 839; *see also* TEX. R. CIV. P. 215.4(b).  Dustin's tenth issue is overruled.

### III. CONCLUSION

We affirm the trial court's judgment.

_____

GREGORY T. PERKES
Justice

Delivered and filed the
31st day of January, 2013.