HARRIS COUNTY, Appellant,

v.

Lucie Cashore SMOKER, Appellee.

No. 01–95–00383–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 15, 1996.

Rehearing Overruled Nov. 21, 1996.

Lana S. Shadwick, Houston, for appellant.

Russell S. Briggs, Houston, for appellee.

Before WILSON, COHEN and O'CONNOR, JJ.

## OPINION

WILSON, Justice.

The appellant, Harris County, appeals from a jury verdict in favor of the appellee, Lucie Cashore Smoker. Smoker brought a claim against Harris County for damages she sustained by falling into an uncovered storm sewer. The jury found Harris County liable for part of Smoker's damages and the trial court rendered judgment awarding Smoker $75,188.31.

In three points of error, Harris County argues the trial court committed error by not giving the proper jury instructions and denying its motion for an instructed verdict, and contends the evidence was legally insufficient to support the jury's verdict. We affirm.

### Summary of facts

In her second amended original petition, Smoker brought a cause of action against Harris County for negligence, under the Tex-

as Tort Claims Act.[1] Smoker claimed she was injured when she fell into an uncovered storm sewer and alleged Harris County was negligent for:

(1) not warning her of the defective and/or inadequate condition of the roadway caused by the absence of the storm sewer cover;

(2) not conducting a reasonable, diligent inquiry that would have informed Harris County of the fact that the cover was missing;

(3) not performing a reasonable, diligent inspection that would have informed Harris County of the defective condition of the roadway caused by the absence of the storm sewer cover;

(4) not properly maintaining the storm sewer; and

(5) not correcting and/or repairing the defective condition of the roadway caused by the absence of the storm sewer cover.

Smoker alleged Harris County knew or should have known of the defective condition of the roadway caused by the absence of the storm sewer cover and argued the open storm sewer constituted a special defect.

At trial, Smoker testified she worked for a citizens group, Texans United for a Safe Economy (TUSE), concerned with economic and environmental issues.[2] On March 20, 1990, Smoker was canvassing a neighborhood to solicit new members for this organization near the intersection of Mystic Wood and Woodbough streets at about 7:30 p.m. Smoker testified she was walking on the south side of Woodbough street when she fell into an uncovered storm sewer. Smoker testified she was walking along the edge of the street because there was no sidewalk on that side of Woodbough. She added there were no street lights within two or three blocks of that area and she did not see the storm sewer before she fell.

Smoker was taken to Methodist Hospital emergency room. The next day, she was treated by Dr. Grant Braly. Dr. Braly testified by deposition that Smoker fractured the lateral malleolus of her right ankle. Braly operated on Smoker's ankle and inserted a plate and several screws to repair the fracture. Braly also prescribed physical therapy for Smoker after the operation. Braly estimated Smoker's impairment to be 20 percent for her injury.

Terra Mouton, a resident of that area who lives four houses from the intersection of Woodbough and Mystic Wood, testified by videotaped deposition that she was familiar with the storm sewer Smoker fell into and saw Smoker the evening of the accident. Mouton stated that when she was in high school, the school bus she rode dropped her off at that intersection. Mouton testified the storm sewer extends about two feet into the street, and at the time of the accident the storm sewer cover had been missing for about two months. Mouton added there were no street lights in the neighborhood at that time.

David Allison testified that at the time of the accident he was the head superintendent for the area of Harris County Precinct Four that includes the intersection of Woodbough and Mystic Wood. Harris County was in charge of maintaining the storm sewers in that area. Allison stated the storm sewer protrudes into the street about one and one-half to two feet and if the cover is not in place it could affect the ability of pedestrian and automobile traffic to use the street in a normal fashion.

Allison did not know and did not have any records concerning how long the cover for the storm sewer at that intersection had been missing. Allison stated it was the responsibility of a sign utility man under his supervision to drive through the portion of the precinct including the intersection concerned here and visually inspect traffic signs and storm sewer covers to repair or replace covers seen or reported to be missing or dislodged. Allison speculated that the area was probably inspected a few days before the accident, but admitted he had no documentation to support his belief. Allison further

---

1. TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

2. In her original petition, Smoker named TUSE as a co-defendant. TUSE was non-suited prior to trial and is not a party to this appeal.

stated the absence of a storm sewer cover poses a danger to a person using the roadway.

The jury found the negligence of both parties proximately caused the occurrence in question and assigned 70 percent of the negligence to Harris County and 30 percent to Smoker. The jury awarded damages to Smoker totalling $75,000 for physical pain, mental anguish, disfigurement, physical impairment, medical costs, and loss of past earnings. The trial court rendered judgment reducing the amount of damages by 30 percent to $52,500, assessed costs against Harris County, and ordered Harris County to pay post-judgment interest. The trial court also awarded pre-judgment interest to Smoker, increasing the amount of damages to $75,-118.31.

**The jury charge**

In its first point of error, Harris County contends the trial court committed error by not submitting its requested instructions in the jury charge. Specifically, Harris County argues the trial court should have submitted instructions on premise defect, dangerous condition, and mitigation of damages. Harris County does not separate its complaints about what it contends were errors by the trial court relating to the jury charge into separate points of error. In doing so, it risks having its point considered waived on appeal as multifarious. Tex.R.App.P. 74. However, we proceed to consider this point of error.

**a. Premise defect v. Special defect**

In its request for instructions filed with the trial court, Harris County presented a written instruction on premise defect. The trial court did not include the requested instruction and overruled Harris County's objections to the charge.

Under the provisions of the Texas Tort Claims Act, a governmental unit in the State is liable for;

personal injury or death so caused by a condition or use of tangible personal or real property if the governmental ˙ unit would, were it a private person, be liable to the claimant according to Texas law.

Tex.Civ.Prac. & Rem.Code Ann. § 101.021(2) (Vernon 1986). Section 101.022 of the Act provides:

(a) If a claim arises from a *premise defect,* the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.
(b) The limitation of duty in this section does not apply to the duty to warn of *special defects* such as excavations or obstructions on highways, roads or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices....

Tex.Civ.Prac. & Rem.Code Ann. § 101.022 (Vernon 1986) (emphasis added). The Act does not further distinguish between premise and special defects.

The determination of whether a condition is a premise or special defect is an issue of duty involving statutory interpretation and thus a question of law. *State v. Burris,* 877 S.W.2d 298, 299 (Tex.1994); *State Dept. of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992); *Graf v. Harris County,* 877 S.W.2d 82, 85 (Tex. App.—Houston [1st Dist.] 1994, writ denied). If the uncovered storm sewer was a premise defect, Harris County owed Smoker the same duty a private landowner owes a licensee. *Payne,* 838 S.W.2d at 237. That duty requires that a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of or to make reasonably safe a dangerous condition of which the owner is aware and the licensee is not. *Id.* However, if the uncovered storm sewer was a special defect, Harris County owed Smoker the same duty to warn that a private landowner owes an invitee. *Id.* That duty requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware. *Id.*

A special defect has been characterized generally as an unexpected and unusual danger to ordinary users of a roadway. *Payne,* 838 S.W.2d at 238. A special defect is distinguished by some unusual quality out-

side the ordinary course of events, and a longstanding, routine, or permanent condition is not a special defect. *Mitchell v. City of Dallas*, 855 S.W.2d 741, 747–48 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex.1994).

Texas courts have found a particular condition constituted a special defect in several cases. *See, e.g., Harris County v. Eaton*, 573 S.W.2d 177, 178–79 (Tex.1978) (oval-shaped hole six to 10 inches deep extending across 90 percent of a roadway that caused a car traveling at 35 miles per hour to flip); *State v. Nichols*, 609 S.W.2d 571, 573 (Tex.Civ. App.—Waco 1980, writ ref'd n.r.e.) (caved in portion of highway three to four feet deep extending across entire highway); *State v. McBride*, 601 S.W.2d 552, 558 (Tex.Civ. App.—Waco 1980, writ. ref'd n.r.e.) (slick, muddy excavation out of highway so severe that car traveling at less than 35 miles per hour went out of control); *Miranda v. State*, 591 S.W.2d 568, 569 (Tex.Civ.App.—El Paso 1979, no writ) (flood water two feet deep across highway); *Andrews v. City of Dallas*, 580 S.W.2d 908, 909–11 (Tex.Civ.App.—East-land 1979, no writ) (base of traffic signal extending 26 inches above street level and six inches from roadway); *City of Houston v. Jean*, 517 S.W.2d 596, 599 (Tex.Civ.App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (ditch four feet from unmarked dead end of street at poorly lighted "T" intersection).

Texas courts have also found certain conditions did not constitute special defects. *See, e.g., State Dept. of Highways & Pub. Transp. v. Kitchen*, 867 S.W.2d 784, 786 (Tex.1993) (icy bridge during conditions of precipitation and near-freezing temperatures was not "unexpected and unusual" danger); *Payne*, 838 S.W.2d at 239 (unmarked culvert 22 feet from roadbed and obscured by vegetation was located far enough from road so as not to be danger to ordinary users of roadway); *Graf*, 877 S.W.2d at 86 (step on a path at arboretum not a condition involving an excavation or obstruction on a highway, road, or street); *Mitchell*, 855 S.W.2d at 748 (15 to 25 foot drop-off along creek bed created by construction of a wall to prevent soil erosion was longstanding and permanent condition and not a special defect); *Villarreal v. State*,

810 S.W.2d 419, 422 (Tex.App.—Dallas 1991, writ denied) (roadway median cut that created condition where motorist could enter exit ramp in wrong direction was a permanent condition, not a special defect).

■ In this case, the condition presented by the uncovered storm sewer was located in or in close proximity to the roadway. The witnesses testified the sewer extended one and one-half to two feet into the street. There were no sidewalks on that portion of the street, and the sewer would therefore be encountered by pedestrians walking along the street near the curb. Harris County employees were directed to replace any storm sewer covers as soon as they were reported or observed to be missing. The absence of the sewer cover was therefore not a longstanding or permanent condition as considered by the courts in *Mitchell* and *Villarreal*. While walking along an unlit or poorly lighted street, a pedestrian should certainly not expect to usually encounter an uncovered, unmarked hole. We conclude the uncovered storm sewer located where a pedestrian would normally walk on a street without a sidewalk and in the absence of streetlights, constituted a special defect. Therefore, we hold the trial court did not err by refusing to instruct the jury on premise defect.

■ Harris County argues, alternatively, that the trial court's instruction was not a proper instruction on special defect. As the condition in this case constituted a special defect, Harris County owed Smoker the duty owed by a private landowner to an invitee. *Payne*, 838 S.W.2d at 237. In *Payne*, the court stated that to establish liability, an invitee must prove:

(1) a condition of the premises created an unreasonable risk of harm to the invitee;

(2) the owner knew or reasonably should have known of the condition;

(3) the owner did not exercise ordinary care to protect the invitee of the danger;

(4) the owner's failure to exercise ordinary care was a proximate cause of injury to the invitee.

*Id.*

■ The jury charge submitted by the trial court included the following definitions:

"NEGLIGENCE", when used with respect to the conduct of Harris County, means failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition that Harris County knows about or in the exercise of ordinary care should know about.

"ORDINARY CARE", when used with respect to the conduct of Harris County, means that degree of care that would be used by a governmental unit of ordinary prudence under the same or similar circumstances.

. . . .

"PROXIMATE CAUSE", means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person or governmental unit using the degree of care required of them would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The terms "negligence" and "ordinary care" were also defined with respect to the conduct of Smoker. Question number one of the charge asked: "Did the negligence, if any, of those named below proximately cause the occurrence in question?"[3] The jury answered "yes" for both parties.

Although question number one of the jury charge posed the issue of liability in a broad style, the definitions included in the court's charge properly addressed those elements an invitee must prove to establish liability as set out in *Payne*.[4] Therefore, we conclude the trial court's charge was not an improper charge on the issue of special defect.

### b. Instruction on dangerous condition

■ Harris County argues the trial court erred by not including its requested instruction on "dangerous condition." Texas Rule of Civil Procedure 278 states:

The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence.

Rule 278 provides a substantive, non-discretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them. *Elbaor v. Smith*, 845 S.W.2d 240, 243 (Tex.1992). However, if the wording of a requested instruction is not substantially correct, submission of the instruction does not preserve error. Tex.R.Civ.P. 278.

The instruction proffered by the county states:

You are instructed that a **"dangerous condition"** is a condition that constitutes an unreasonable risk of harm to a person exercising ordinary care on the occasion in question.

Not every premises condition which results in injury is a dangerous condition. You are further instructed that a condition that is open and obvious is not a "dangerous condition."

The first paragraph of the county's requested instruction adds nothing to the language already present in the charge defining negligence with respect to Harris County, as set out above.

---

3. This is the basic broad form question appropriate in most premises liability cases when it is undisputed that the plaintiff is an invitee. 3 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PCJ 66.04 (1994); *see* TEX.R.CIV.P. 277; *Keetch v. Kroger Co.*, 845 S.W.2d 262, 266 (Tex.1992) (a general negligence question accompanied by appropriate definitions is a correct broad form premises liability question).

4. In its brief, Harris County contends the trial judge made comments in agreement with its position that a missing storm sewer cover does not constitute a special defect. Although the statement of facts attributes these comments to the trial judge, a close examination of the exchange of argument reveals that these comments were made by counsel for Harris County and not the trial judge. We consider this to be simply a stenographic error.

■ We have determined Harris County owed Smoker the same duty a private landowner owes to an invitee. The second sentence of the second paragraph of the county's requested instruction misstates the law with respect to the duty owed by a landowner to an invitee. The doctrine that an occupier of land has no duty to warn or protect invitees of an open and obvious dangerous condition has been abolished and replaced with ordinary negligence principles. *Keetch*, 845 S.W.2d at 266; *see Parker v. Highland Park*, 565 S.W.2d 512, 519 (Tex.1978). Because the requested instruction offered by Harris County was not substantially correct, we conclude the trial court did not err by excluding it.

### c. Instruction on mitigation of damages

Harris County further asserts that, in addition to the instruction given on contributory negligence, it was entitled to an instruction on mitigation of damages. At the formal charge conference, the county requested the trial court include the following instruction in the charge:

> Do not include any amount for any condition resulting from the failure, if any, of LUCIE CASHORE [sic] to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating her injuries, if any, that resulted from the occurrence in question.[5]

The proposed instruction was submitted in writing at the charge conference. After counsel for Harris County argued for the inclusion of the instruction, the trial court overruled the instruction, and the instruction was marked "refused."

■ As noted above, submission of an issue is proper if raised by the pleadings and evidence. TEX.R.CIV.P. 278; *Elbaor*, 845 S.W.2d at 243. Harris County did not plead mitigation of damages in its first amended answer but generally denied all of Smoker's allegations. However, the Supreme Court has held that a party's failure to mitigate damages by treatment of personal injuries is not an affirmative defense and does not have to be specifically pleaded to let in evidence on the issue and entitle an opposing party to an instruction on the issue. *Moulton v. Alamo Ambulance Serv., Inc.*, 414 S.W.2d 444, 448 (Tex.1967). Evidence on the issue of mitigation of damages is admissible under a general denial. *Greater Fort Worth and Tarrant County Community Action Agency v. Mims*, 627 S.W.2d 149, 151 (Tex.1982). Therefore, the issue of mitigation was raised by the pleadings.

■ A trial court may refuse to submit an issue only if no evidence exists to warrant its submission. *Elbaor*, 845 S.W.2d at 240. The mitigation of damages doctrine requires an injured party to exercise reasonable care to minimize its damages, if the damages can be avoided with only slight expense and reasonable effort. *Great Am. Ins. Co. v. North Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.1995); *City of San Antonio v. Guidry*, 801 S.W.2d 142, 151 (Tex.App.—San Antonio 1990, no writ). In *Moulton*, the Supreme Court noted that an instruction on mitigation of damages is appropriate when there is evidence of negligence on the part of a plaintiff in: 1) not consulting a doctor; 2) not consulting a doctor as soon as a reasonable person would; 3) not following a doctor's advice; or 4) not properly caring for and treating injuries that do not require the attention of a doctor. 414 S.W.2d at 450. However, the party who caused the loss bears the burden of proving lack of diligence on the part of the plaintiff, and the amount by which the damages were increased by the failure to mitigate. *Guidry*, 801 S.W.2d at 151; *Cocke v. White*, 697 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

■ The evidence presented at trial showed Smoker was taken to a hospital emergency room almost immediately after her injury. Dr. Braly treated Smoker and recommended she undergo surgery to install a metal plate and four screws to repair her fractured ankle. Dr. Braly performed this surgery within days of Smoker's injury.

---

5. The requested instruction tracks the language of the applicable pattern jury charge. *See* 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PCJ 7.09 (1994).

Braly also stated he prescribed physical therapy to increase the strength and range of motion of Smoker's ankle. Smoker stated she went to the physical therapist for treatment twice, but did not complete Dr. Braly's prescription that she attend two to three times a week for three weeks. Braly did not specify any amount of increase in ankle strength or range of motion that would be have been gained from physical therapy, or any amount lost from not following with such therapy.

On his last visit with Smoker, Dr. Braly recommended she undergo a second surgery to remove the metal implants and a bone spur on the fractured bone. Braly added that in his opinion the second surgery was necessary to correct the condition of her foot, and without the surgery the condition would continue to be painful. Smoker stated she also did not undergo the second surgery to remove the plate and screws. On cross-examination, Smoker admitted she knew some hospitals provided medical care to patients who are unable to pay but stated she did not seek medical treatment there. Dr. Braly estimated Smoker's impairment to be approximately 20 percent as a result of her injury, but further stated that this level of impairment would continue whether she elected to have the second surgery or not. Braly added that he could not factor in an amount for pain, because it was too subjective.

After examining all the evidence, we conclude Harris County did not present any evidence of an amount by which Smoker's damages were increased by her alleged failure to mitigate. Therefore, the trial court was not required to submit the requested instruction on mitigation. Accordingly, we overrule that portion of Harris County's first point of error concerning the trial court's refusal to submit an instruction on mitigation of damages.

Harris County's first point of error is overruled.

**Motion for directed verdict**

■ In its second point of error, Harris County contends the trial court erred by not granting its motion for directed verdict because no evidence was presented that the county knew of the defect caused by the uncovered storm sewer. A directed verdict is proper when the evidence offered on a cause of action is insufficient to raise an issue of fact. *McCarley v. Hopkins*, 687 S.W.2d 510, 512 (Tex.App.—Houston [1st Dist.] 1985, no writ).

■ As we have determined the defect in question here was a special defect, Smoker was not required to prove Harris County had actual knowledge of the defect. As an invitee, Smoker was only required to show Harris County reasonably should have known of the condition of the uncovered sewer. Although an employee of Harris County testified the county made frequent visual inspections of traffic signs and storm sewers to repair or replace them, a resident testified this particular storm sewer cover had been missing for at least two months. We conclude this evidence was sufficient to defeat Harris County's motion for directed verdict and we overrule its second point of error.

**Insufficient evidence**

In its third point of error, Harris County argues the evidence was legally insufficient to support the jury's finding of liability against it for either a premise or special defect because Smoker offered no evidence the county had actual knowledge of the uncovered storm sewer. Because we have previously determined the missing storm sewer cover was a special defect, Smoker did not have to prove Harris County's actual knowledge of the defect to support a finding of liability.

■ In reviewing a no evidence point, we must consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding of the jury, and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank*, 760 S.W.2d 240, 242 (Tex. 1988).

An employee of Harris County, Allison, testified the absence of a storm sewer cover is a danger to persons using the roadway and county employees conducted frequent inspections to detect uncovered storm sewers. Allison speculated the area may have been inspected a couple of days before the incident, but did not have any record of such an inspection or perform such an inspection himself. Mouton, a resident of the street, stated the cover had been missing for two months. Smoker testified she fell into the uncovered storm sewer and sustained injuries as a result of her fall. We conclude the evidence presented was legally sufficient to support the jury's finding of liability against Harris County. Therefore, we overrule Harris County's third point of error.

We affirm the judgment of the trial court.