**Opinion issued May 7, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00720-CV

————————————

**CITY OF LEAGUE CITY, Appellant**

**V.**

**CHRISTOBELLE LEBLANC AND STANFORD LEBLANC, Appellees**

On Appeal from the 122nd District Court
Galveston County, Texas
Trial Court Case No. 12-CV-2828

## O P I N I O N

Christobelle and Stanford LeBlanc sued the City of League City ["the City"] pursuant to the Texas Tort Claims Act ["TTCA"] seeking damages for personal injuries Christobelle sustained while walking near a public highway. *See* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109 (Vernon 2011 & Supp. 2014). In this

interlocutory appeal, the City challenges the trial court's order denying its plea to the jurisdiction. We vacate the trial court's order and dismiss the LeBlancs' case for lack of jurisdiction.

## BACKGROUND

On the evening of December 4, 2010, while attending a parade in League City, Texas, Christobelle Leblanc stepped into a storm sewer drain and broke her ankle. The storm sewer drain was located about eight feet from the curb of F.M. 518 and was near, but not in, a worn path that pedestrians use along F.M. 518.[1] It is undisputed that the storm sewer drain was designed and built by the Texas Department of Transportation (TxDOT), and was located in TxDOT's easement. The storm drain did not have a solid cover, but was instead covered with a grate, through which Leblanc stepped thereby breaking her ankle. It is also undisputed that the drain and grate in place are in the condition and location as specified and installed by TxDOT around 1985. The lighting in the area was similarly designed and placed by TxDOT.

The LeBlancs filed this suit against the City, and their live pleadings alleged that the City's immunity is waived because "[t]he City controlled and/or owned the premises where Ms. LeBlanc was walking at the time of her injury . . ." and because "[t]he condition of the premises where Ms. LeBlanc was walking that

---

[1] Although not present at the time of the accident, a concrete sidewalk has since been built in this location.

caused Ms. LeBlanc's injuries was a special defect, and the City owed Ms. LeBlanc the same duty that a private landowner owned an invitee." Specifically, LeBlanc alleged that the City was liable for:

a) not warning Ms. LeBlanc and those similarly situation of the defective and/or inadequate condition of the street caused by the absence of the storm drain cover;

b) not conducting a reasonable, diligent inquiry that would have informed the City of the fact that the storm drain was not covered and located in a pedestrian sidewalk;

c) not performing a reasonable, diligent inspection or inquiry that would have informed the City of the defective condition of the street caused by the absence of the storm drain cover and the location of the storm drain;

d) not properly maintaining the storm drain; and

e) not correcting and/or repairing the defective condition of the sidewalk on F.M. 518 caused by the absence of a storm drain cover and its location on F.M. 518.

In her response to interrogatories, LeBlanc explained, "I felt that the drain area needed to be covered and/or a sign should be placed in full view making pedestrians award of the danger that existed." When asked to describe the dangerous premises she encountered, LeBlanc stated, "[T]here was a drainage hole lined with iron grid bards in the middle of a walkway at 1013 Farm to Market 518, League City, Texas. The walkway had no lighting, such that the drainage hole lined with iron grid bars was not visible while dark outside. The grid bars on the drainage hole were spaced apart such that an unsuspecting person could step into the drainage hole."

3

The LeBlancs also sued TxDOT, but TxDOT was dismissed after the LeBlancs failed to comply with the notice provisions of the TTCA. As a result, TxDOT is not a party to this appeal.

The City filed a Plea to the Jurisdiction, to which it attached evidence, asserting that (1) it owed no duty to LeBlanc because TxDOT, not the City, controlled the allegedly defective premises, (2) the decision to put a grate rather than a solid cover, as well and where to place the lighting, were part of TxDOT's original design, and that immunity is not waived for discretionary design decisions, and (3) the storm drain did not present a special defect as a matter of law.

The LeBlancs responded to the City's Plea, and the only evidence they attached was a "Municipal Maintenance Agreement," which they contended showed that the City, not TxDOT, was responsible for maintaining the storm drain.

After a hearing that consisted of argument only, the trial court denied the City's Plea to the Jurisdiction, and this appeal followed.

## PLEA TO THE JURISDICTION

In several related issues on appeal, the City contends the trial court erred in denying its Plea to the Jurisdiction because (1) it owed no duty to LeBlanc, (2) the Le Blancs' pleadings allege a design defect, which does not waive immunity, and (3) the storm drain was not a special defect.

*Standard of Review*

A plea to the jurisdiction based on governmental immunity is a challenge to the trial court's subject matter jurisdiction. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009). We review a plea questioning the trial court's subject matter jurisdiction de novo. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we "'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of action." *Kirwan*, 298 S.W.3d at 622 (*quoting Miranda*, 133 S.W.3d. at 227). The plea to the jurisdiction standard mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *Ross v. Linebarger, Goggan, Blair & Sampson, L.L.P.*, 333 S.W.3d 736, 744 (Tex. App.—Houston [1st Dist.] 2010, no pet.). When reviewing the evidence, we must "'take as true all evidence favorable to the nonmovant' and 'indulge every reasonable inference and resolve any doubts in the nonmovant's favor.'" *Kirwan*, 298 S.W.3d at 622 (*quoting Miranda*, 133 S.W.3d. at 228). If the evidence creates a fact issue as to the jurisdictional issue, then the fact-finder will decide that issue. *Id.* (*citing Miranda*, 133 S.W.3d. at 227–28). "'However, if the relevant evidence is undisputed or fails to raise a fact

5

question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.'" *Id.* (*quoting Miranda*, 133 S.W.3d. at 228).

### *Texas Tort Claims Act*

Under the TTCA, the government waives immunity from suit to the extent of liability under the Act. TEX. CIV. PRAC. & REM. CODE ANN. § 101.025 (Vernon 2011); *Kirwan*, 298 S.W.3d at 622. Governmental entities are liable under the TTCA for "personal injury . . . caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2011).

The TTCA generally limits the duty of a governmental unit regarding a premises defect to the duty owed to a licensee on private property. TEX. CIV. PRAC. & REM. CODE § 101.022(a). When the premises-liability claim involves a "special defect," however, the government's duty is not so limited. *See id.* § 101.022(b) (imposing invitee duty for special defects). The TTCA does not define the term "special defects" except to state that they include "excavations or obstructions on highways, roads, or streets." *Id.* The Texas Supreme Court has construed special defects to include other defects of the same kind or class as the two expressly mentioned in the statute. *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam). Whether a premises defect is special or ordinary is usually a

6

question of law. *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010) (per curiam).

### Discretionary Act

The City argues that, even if we decide that the City owed a duty to maintain the storm sewer grate, a lack of maintenance did not cause LeBlanc's injury. Specifically, the City argues that the storm sewer grate was not in need of maintenance, and that the Le Blancs' claim is that the storm sewer should have had a cover rather than an open grate, which is a design flaw, not a maintenance issue. We agree.

"Maintenance involves preservation of a highway as it was originally designed and constructed." *Villarreal v. State*, 810 S.W.2d 419, 421 (Tex. App.—Dallas 1991, writ denied). "[M]aintenance is clearly distinguishable from design in that maintenance refers to the preservation of existing conditions." *State Dep't of Transp. v. Barraza*, 157 S.W.3d 922, 928 (Tex. App.—El Paso 2005, no pet.) "Stated differently, maintenance is the continuing implementation of a previous policy decision." *Id.* "Maintenance is the preservation of existing infrastructure." *Id.*, *see Garza v. State*, 878 S.W.2d 671, 675 (Tex. App.—Corpus Christi 1994, no writ) (finding that maintenance involves the preservation of existing conditions); *see also Siders v. State*, 970 S.W.2d 189, 193 (Tex. App.—Dallas 1998, pet. denied) (finding a duty to maintain highway as designed).

LeBlanc's pleading complains of "the absence of the storm drain cover," her answers to interrogatories further explains that "the drain area needed to be covered," and that "[t]he grid bars on the drainage hole were spaced apart such that an unsuspecting person could step into the drainage hole." The uncontroverted evidence shows that the storm drain never had a cover, but was designed by TxDOT with the metal grate that was in place at the time of the accident. As such, LeBlanc's claim is that the storm drain was improperly designed, not that it was improperly maintained. Even if the City had a duty to maintain the storm sewer, that duty would be to maintain the sewer as designed by TxDOT. There was testimony that storm drain in question was installed according to TxDOT's design, including the placement of the grate covering the storm sewer drain. The City also presented an affidavit from Robert Wright, the City's Director of Engineering and Traffic, who testified that "[t]here has been no modification of the storm drain inlet and grate at or near 1013 F.M. 518 from its original TxDOT designs."

Further, even if the City was responsible for the design of the storm sewer and its grate, which it was not, the TTCA does not waive sovereign immunity for the discretionary actions of a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 101.056(2). Thus, if the State's action is discretionary, it does not waive its immunity. *See State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999), *abrogated on other grounds by Denton Co. v. Beynon*, 283 S.W.3d 329 (Tex. 2009); *State v.*

*Burris*, 877 S.W.2d 298, 299 (Tex. 1994). An act is discretionary if it requires exercising judgment and the law does not mandate performing the act with such precision that nothing is left to discretion or judgment. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994). Design of any public work, such as a roadway, is a discretionary function involving many policy decisions, and the governmental entity responsible may not be sued for such decisions. *See Villarreal v. State*, 810 S.W.2d 419, 422 (Tex. App.—Dallas 1991, writ denied).

Here, the decision to use a grate, rather than a solid covering for the storm sewer involved the same type of policy decision as designing a roadway and, as such, is a discretionary act for which immunity is not waived. *See Rodriguez*, 985 S.W.2d at 86 (holding design of detour was discretionary act for which immunity was not waived); *Harris Co. v. Estate of Ciccia*, 125 S.W.3d 749, 753–54 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding government not liable for flawed road design); *City of McAllen v. Hernandez*, No. 13-04-182-CV, 2005 WL 2000818, at *5–6 (Tex. App.—Corpus Christi 2005, pet. denied) (memo op.) (holding that "shop-made" lid on drainage box near sidewalk was discretionary act for which immunity not waived).

## Special Defect

The LeBlancs also pleaded that the storm sewer was a "special defect," for which immunity was waived. The TTCA provides a limited waiver of immunity to

9

suit for tort claims arising from special defects. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.022(b) (Vernon 2011). The TTCA likens special defects to "excavations or obstructions on highways, roads, or streets." *Id.* § 101.022(b). The statutory test for a "special defect," for purposes of the TTCA, is simply whether the condition is of the same class as an excavation or obstruction on a highway, road, or street, and there is no requirement that the condition pose an unexpected and unusual danger. *See Denton Co. v. Beynon*, 283 S.W.3d 329, 331 n.11 (Tex. 2009). The determination of whether a condition is a special defect is a question of law for the court to decide. *State v. Burris*, 877 S .W.2d 298, 299 (Tex. 1994).

In arguing that the storm drain in this case presented a "special defect," the LeBlancs rely heavily on a factually similar, but distinguishable, case from this Court, *Harris Co. v Smoker*, 934 S.W.2d 714 (Tex. App.—Houston [1st Dist.] 1996, writ denied). In *Smoker*, the plaintiff was walking along the south side of a street when she fell into the storm sewer. *Id.* at 717. She presented evidence that there was no sidewalk on that side of the street, the storm sewer extended approximately two feet into the street, and at the time of the accident the storm sewer cover had been missing for about two months. *Id.* This Court found that the storm sewer was located in close proximity to the roadway, and, since there was no sidewalk on the south side of the street, the sewer would be encountered by

pedestrians walking along the street near the curb. *Id.* at 719. We further held that "[w]hile walking along an unlit or poorly lighted street, a pedestrian should certainly not expect to usually encounter an uncovered, unmarked hole" and concluded that an uncovered storm sewer located where a pedestrian would normally walk on a street without a sidewalk and in the absence of streetlights constituted a special defect. *Id.*

*Smoker* is distinguishable for several reasons. First, in *Smoker*, there was no design/maintenance issue. The storm sewer in *Smoker* had been designed with a cover, which had been missing for two months. 934 S.W.2d at 717. The county's duty to maintain the storm sewer in *Smoker* would necessarily include insuring that its cover was present as designed. Here, however, the storm sewer never had a cover, thus, any maintenance duty owed by the City would not require it to alter TxDOT's design.

Second, in *Smoker*, the plaintiff was walking "along the edge of the street" when she fell into the storm sewer, which extended two feet into the street. *Id.* Here, the storm drain was located eight feet from the edge of the curb, and photographs show that the storm drain does not extend into the street, but is, instead located near, but not in, a worn pathway used by pedestrians several feet away from the curb. Thus, the storm drain here is more like an open manhole cover found not to be a special defect in *Purvis v. City of Dallas* because it was

11

located "a few feet west of the sidewalk," and did not present a danger to ordinary users of the road. No. 05-00-01062-CV, 2001 WL 717839, at *2–3 (Tex. App.—Dallas 2001, no pet.) (not designated for publication).

Finally, the Court in *Smoker* noted that longstanding and permanent conditions are not special defects, but concluded the open sewer drain was, in fact, a special defect because "[t]he absence of the sewer cover was . . . not a longstanding or permanent condition[.]" 934 S.W.2d at 719. Here, there never was a sewer cover—it was designed to have a grate rather than a solid cover. A longstanding, routine, or permanent condition is not a special defect. *See Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994) (holding 15 to 25 foot drop-off along creek bed created by construction of a wall to prevent soil erosion was longstanding and permanent condition and not a special defect); *Villarreal v. State*, 810 S.W.2d 419, 422 (Tex. App.—Dallas 1991, writ denied) (holding roadway median cut that created condition whereby motorist could enter exit ramp in wrong direction was a permanent condition, not a special defect). There was evidence that the storm sewer was in the same condition in which it had been installed in 1985, thus it was a "longstanding, routine, or permanent condition," and not a special defect.

## CONCLUSION

For the reasons given above, we vacate the trial court's order and dismiss the case for want of jurisdiction.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.