# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00376-CV

**City of Austin, Appellant**

**v.**

**Caroline Nelson, Appellee**

### FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-22-004053, THE HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Caroline Nelson sued the City of Austin for personal injuries she sustained when she fell into a dislodged tree grate on a downtown sidewalk. In a plea to the jurisdiction, the City asserted that Nelson's suit is barred by governmental immunity, which the trial court denied. The City appeals. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (permitting interlocutory appeal of order denying governmental unit's plea to jurisdiction). We will affirm the trial court's order denying the City's plea.

## BACKGROUND

In her live petition, Nelson alleges that on May 20, 2022, she was walking southbound on the sidewalk of Rio Grande Street when she "fell into a dislodged tree grate/metal casing" near 2100 Rio Grande. She broke her ankle as a result of the fall. Below is a picture that

Nelson alleges accurately depicts the premises taken immediately after her fall, which picture she attached to her response to the City's plea.



Nelson brings a cause of action against the City for premises liability.[1] She alleges that the City had actual and constructive knowledge of the dislodged or "dislocated" tree grate by virtue of several facts: the presence of over ten different City parking-enforcement officers who

---

[1] She also lists res ipsa loquitur (meaning "the thing speaks for itself") as a "cause of action," but that doctrine is not a separate or independent cause of action from negligence. Instead, it is a rule of evidence by which negligence may be inferred by the factfinder when (1) the character of the accident, or the injury, is a type that would not ordinarily occur in the absence of negligence; and (2) the instrumentality causing the injury was under the defendant's management and control. *See Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990).

issued about seventy-five parking tickets in the 2100 block of Rio Grande between March 31, 2022, and the date of her injury; the City's relocation of a bench near the grate several months before her injury; and the City's "performance of construction and/or maintenance and/or code enforcement" near the grate in the months before her injury.[2]  Nelson alleges that the City negligently repaired the grate about a year before her injury but that soon thereafter the grate again became dislodged and remained so until her injury.  She alleges that the grate had remained dislodged and in its partially collapsed state for at least fifty days before her injury, supporting her allegation with Google Maps photographs of the premises taken March 30, 2022, and produced by Google pursuant to subpoena.  She additionally alleges that the City's failure to inspect or properly maintain the grate after its previous dislodgment constituted willful, wanton, or gross negligence.

In its plea to the jurisdiction, the City first argued that it is protected from suit by governmental immunity and that Nelson cannot demonstrate that her claim falls within the scope of the Texas Tort Claims Act's waiver of governmental immunity.  Specifically, the City argued that the dislodged grate, assuming it was defective at all, was an ordinary premises defect rather than a special defect and the City had no actual knowledge of its condition prior to Nelson's injury.  The City next argued that, assuming the dislodged grate was a special defect, Nelson could not show that the City should have known of its condition.  Lastly, the City argued that (a)

---

[2]  In her declaration and response to the City's plea to the jurisdiction, Nelson refers to the tree grate as "dislocated" rather than "dislodged," and in her appellate briefing she refers to the grate as having "collapsed."  We think the semantic distinction is immaterial for purposes of our appellate analysis because—as the adage goes—the photograph reproduced herein is "worth a thousand words."  However, for consistency in this opinion and because we need to identify the premises condition somehow, we defer to and employ the term used in Nelson's live pleading ("dislodged") even though, as explained below, that term conjures a more benign condition than that which the photograph depicts.

it was not grossly negligent in failing to repair the dislodged grate, (b) Nelson's claims fail because the City's decision to use removable tree grates is a discretionary decision for which immunity is not waived, and (c) the dislodged grate was not unreasonably dangerous as a matter of law.

The City argued in its plea to the jurisdiction that it relies on reports people make to 311 to know if there are any issues related to the public right of way. It attached evidence from its 311 database showing it had received six total service requests between May 1, 2021, and June 30, 2022, in the vicinity of the dislodged grate. The first three were from May 2021 and involved reports that the same tree grate was dislodged—the City resolved this complaint by "putting the grates back in place." One May 2021 service request cited the citizen's report as, "2100 Rio grande. West c[urb]. Tree gra[t]e fallen in to the hole. A 13in hole. In the dark somebody can fall in and hurt themselves. Needs to be put back in place." The photograph attached to that report depicted a partial collapse of the grate on the north side, like its condition when Nelson's injury occurred. Another May 2021 report indicated that the grates "covering the sidewalk tree surroundings have been removed and rearranged to form ramps for skateboarding/bikes. Easy to fall into area around trees or run into metal grates." Two reports from May 2021 pertained to bolts protruding from the sidewalk near the tree grate—the City resolved that complaint by removing the bolts. The final report was filed by Nelson just a few days after her injury.

In her response to the City's plea to the jurisdiction, Nelson attached the following evidence in addition to the Google-produced photographs: City-produced records of service requests pertaining to the grate and photographs of prior repairs to the grate; records of parking tickets from the vicinity obtained pursuant to open-records requests; records pertaining to a

4

Notice of Code Violation issued by the City of Austin for the property at 2100 Rio Grande Street with a January 5, 2022 observation date; Nelson's declaration; and a February 2022 Google Maps photograph of the tree grate that Nelson "pulled from the Internet directly" depicting the same tree grate in the same dislodged condition with a bench directly to the south of it (the March 2022 Google Maps photograph does not depict the bench). In her declaration, Nelson avers that it was nighttime when she sustained her injury, that there was "little or no light" in the vicinity, and that the photograph reproduced above is a true and correct copy of herself taken near the grate immediately after the injury.

## DISCUSSION

We review de novo the trial court's ruling on the City's plea to the jurisdiction. *Sampson v. University of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). We focus first on the plaintiff's petition to determine whether the facts that were pleaded affirmatively demonstrate that subject-matter jurisdiction exists. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the pleadings liberally in favor of the plaintiff. *Id.* If, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court may consider evidence and must do so when necessary to resolve the jurisdictional issues raised. *See id.* at 227. When the defendant's plea to the jurisdiction challenges the existence of jurisdictional facts that implicate the merits of the plaintiff's claim and the defendant presents evidence to support its plea, the trial court is required to review the relevant evidence to determine if a fact issue exists. *See id.* If a fact issue exists, the plea cannot be granted, and the fact question will be resolved by the factfinder. *Id.* at 227–28.

Although the City is a governmental unit that would typically enjoy immunity from suit, the Texas Tort Claims Act (TTCA) expressly waives governmental immunity when conditions are met, including relevantly here for premises defects. *See* Tex. Civ. Prac. & Rem. Code §§ 101.021 (governmental unit's liability for injury or death caused by condition or use of tangible or personal property), .022 (duty owed by governmental unit for premise and special defects), .025 (waiver of governmental immunity); *Sampson*, 500 S.W.3d at 384. In four issues, the City argues that the TTCA does not apply to waive its immunity under the facts alleged and evidence adduced.

### Was the dislodged tree grate a special defect?

In its first issue, the City contends that the dislodged tree grate—to the extent it is a premises defect at all—is merely an ordinary defect rather than a special defect. The distinction is significant because the TTCA imposes a higher duty on a governmental unit for the existence of special defects versus ordinary defects. *See* Tex. Civ. Prac. & Rem. Code § 101.022(a), (b); *Fraley v. Texas A&M Univ. Sys.*, 664 S.W.3d 91, 98 (Tex. 2023). For a special defect, the governmental unit owes the same duty that a private landowner owes an invitee: to warn of an unreasonable risk of harm that the premises condition creates when the governmental owner knows or reasonably should know of that condition. *Fraley*, 664 S.W.3d at 98; *see also United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 (Tex. 2022) (recognizing that property owner owes invitee duty to "make safe or warn against any concealed, unreasonably dangerous conditions of which [it was], or reasonably should [have been], aware but [of] which [invitee] was not") (citations omitted)). For an ordinary defect, the governmental unit's duty is the same as a private landowner to a licensee: to warn of a dangerous condition or to make the condition reasonably safe, but only when the governmental unit is aware of the

6

dangerous condition and the licensee is not. *Id.* Whether a premises defect is special or ordinary is a question of law. *Fraley*, 664 S.W.3d at 98; *see also Texas Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012) (noting that appellate courts review de novo trial court's determination of special-defect status).

Special defects include "excavations or obstructions on highways, roads or streets." Tex. Civ. Prac. & Rem. Code § 101.022(b); *Fraley*, 664 S.W.3d at 98. The supreme court has held that a special defect must be "of the same kind or class" as excavations or obstructions. *Fraley*, 664 S.W.3d at 98 (citing *County of Harris v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978)). Factors helpful to ascertaining whether a premises condition is a special defect include the condition's size, whether the condition unexpectedly impairs an ordinary user's ability to travel on the road, and whether the condition presents an unexpected and unusual danger to ordinary users of the road. *Id.* Deciding whether an alleged defect is within the special-defects class is determined on a case-by-case basis. *City of Austin v. Vykoukal*, No. 03-16-00261-CV, 2017 WL 2062259, at *3 (Tex. App.—Austin May 10, 2017, pet. denied) (mem. op.).

Conditions can be special defects only if they pose a threat to the ordinary users of a particular roadway, who follow the normal course of travel. *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010). For purposes of the TTCA, a "road" may include a sidewalk, and an ordinary user of a "roadway" may include a pedestrian on the sidewalk. *City of Austin v. Credeur*, No. 03-19-00358-CV, 2021 WL 501110, at *3 (Tex. App.—Austin Feb. 11, 2021, no pet.) (mem. op.); *City of Austin v. Rangel*, 184 S.W.3d 377, 383–84 (Tex. App.—Austin 2006, no pet.) (employing Section 541.302 of the Transportation Code's definition of

7

sidewalk: "the portion of the street that is between a curb or lateral line of a roadway and the adjacent property line and is intended for pedestrian use").

In *Rangel*, this Court determined that a hole in the sidewalk caused by an absent cover for a water-meter box was a special defect. 184 S.W.3d at 384. The hole in *Rangel* was an eleven-inch opening located about twenty feet from the curb and two feet from the building adjacent to the sidewalk. *Id.* Concluding that a "normal user of the roadway" in that situation would be a pedestrian on the sidewalk, who would not expect to encounter a hole of that size on a downtown public sidewalk, this Court determined that the uncovered water-meter box was a special defect that posed an "unexpected and unusual danger to ordinary users of the sidewalk." *Id.* (citing *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992)).

The dislodged tree grate here created a very similar hazard to that in *Rangel*. The photograph above depicts that the entirety of the tree grate occupies a significant portion—more than half—of the sidewalk's width, with the tree trunk at the center of the grate constituting what appears to be a mere 10-15% of the tree grate's total width. The half of the tree grate furthest from the street had partially fallen into the ground below, creating a gaping hole on the north side. Reports of the grate's similar displacement in previous years reveal that the ground below was about eleven inches below the paved sidewalk surface. Ordinary users of the sidewalk include pedestrians, and a pedestrian would not expect to have to avoid walking on the tree grates (several of which appear along the same stretch of sidewalk) when there are no warning signs advising them not to walk on the grates and when the grates occupy more than half of the area between the curb and the adjacent property line. Ordinary users of the sidewalk also would not expect for a large, deep hole to appear in the middle of the sidewalk without warning, especially while walking along an unlit or poorly lit sidewalk at night. *See id.*; *see Harris*

8

*County v. Smoker*, 934 S.W.2d 714, 719 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (holding that uncovered storm sewer on portion of street that pedestrians normally used due to absence of sidewalk constituted special defect, especially considering absence of streetlights).

The City attempts to distinguish *Rangel* by making several arguments: (1) the tree grate was "adjacent" to the sidewalk because an "ordinary user" following the "normal course of travel" would not have stepped on the grate; (2) the dislodged grate was more akin to an "improperly secured cover" rather than a hole or excavation, *see, e.g.*, *Credeur*, 2021 WL 501110, at *3 (holding that improperly sealed water-meter cover creating uneven surface in grass near sidewalk was not special defect); and (3) that the dislodged grate, unlike a "sunken area" of a sidewalk, would have been "readily apparent" to a pedestrian, *cf. City of Austin v. Furtado*, No. 03-21-00083-CV, 2021 WL 6194365, at *4 (Tex. App.—Austin Dec. 31, 2021, pet. denied) (mem. op.) (holding that sunken area of sidewalk was special defect in part because its extent of disrepair was not readily apparent from pedestrian's vantage). We are not persuaded by any of these arguments.

We have already determined that the undisputed allegations and evidence show that the dislodged tree grate was on the sidewalk, not adjacent to it, and we are not persuaded by the City's argument that the "normal course of travel" for pedestrians requires them to avoid walking on tree grates, especially when a series of grates occupy more than half the width of the sidewalk. Although the City argues that Nelson should have avoided walking on the grates because the tree itself created a "natural barricade" and an "obstruction" to the normal course of travel, the photograph depicted above belies this contention: the large majority of the tree grate's width—assuming it is not dislodged as it was on the date of Nelson's injury—would normally provide ample walking surface area for a pedestrian to easily avoid walking into the tree. *Cf.*

9

*Hayes*, 327 S.W.3d at 116 (holding that metal chain stretched across driveway and located behind large barricade placed to prevent vehicle access was not special defect because users of road in normal course of travel, including bicyclists, should turn back or take alternate route when confronted with large barricade rather than travelling beyond barricade).

As for the City's second argument, *Credeur* and the other "improperly secured cover" cases the City cites are distinguishable because, quite simply, those cases did not involve partially collapsed covers that created a *hole* existing at the time of the injury. Instead, they involved manhole covers that were improperly seated and that then shifted upon the pedestrian or driver's contact. *See City of Houston v. Crook*, No. 06-21-00036-CV, 2021 WL 4804453, at *7 (Tex. App.—Texarkana Oct. 15, 2021, no pet.) (mem. op.) (noting distinction between uncovered manholes (which may constitute special defects because they fall within limited class of "excavations") and improperly seated manhole covers (which may constitute at most only ordinary defects)); *id.* (concluding there was no fact question regarding whether manhole was completely open at time of accident or whether its cover was merely partially unseated and thus trial court should have granted plea to jurisdiction); *City of Lancaster v. LaFlore*, No. 05-17-01443-CV, 2018 WL 4907843, at *5 (Tex. App.—Dallas Oct. 10, 2018, no pet.) (mem. op.) (holding that partially dislodged and "protruding" manhole cover that allegedly caused driver to lose control of vehicle when he drove over it was not special defect); *City of Arlington v. S.C.*, No. 02-17-00002-CV, 2017 WL 3910992, at *3–5 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.) (concluding that improperly sized manhole cover on sidewalk that rotated vertically when plaintiff stepped on it was not special defect). The dislodged, partially collapsed tree grate here was more like the cases involving completely missing manhole or water-meter covers than those with slightly offset or unevenly seated covers. Moreover, in

10

*Credeur* the improperly secured water-meter cover was in the grass *adjacent* to the sidewalk, and an ordinary user of the sidewalk would not be expected to step off the sidewalk and into the grass. *See Credeur*, 2021 WL 501110, at *3.

Finally, we disagree with the City that the dislodged tree grate should have been "readily apparent" and "open and obvious" to Nelson. The allegations and evidence establish that it was nighttime and the area was poorly lit. As we have already explained, a pedestrian following the ordinary path of travel on the sidewalk, especially under low-light conditions, would not expect to have a hole of this size suddenly appear in front of them. *Cf. Furtado*, 2021 WL 6194365, at *4 (noting that depth of sunken area of sidewalk was not "readily apparent" to pedestrians walking in same direction as plaintiff); *Rangel*, 184 S.W.3d at 384 (noting, in opinion that does not recount time of day or lighting conditions at time of plaintiff's injury, that "normal user of" sidewalk would "not expect to encounter a hole of this size on a downtown public sidewalk"). For pedestrians walking southbound as Nelson was, the dislodged grate creates a sudden and deep hole while appearing to protrude just an inch or two from the ground on the opposite end. We conclude that based on the allegations and evidence in the record, the dislodged tree grate was a special defect. We accordingly overrule the City's first issue.

### Did the City have actual or constructive knowledge of the dislodged tree grate?

In its second issue, the City contends that even if the dislodged tree grate was a special defect, Nelson did not raise a fact issue on whether the City knew or should have known of it—that is, that the City had actual or constructive knowledge. *See Furtado*, 2021 WL 6194365, at *6; *Rangel*, 184 S.W.3d at 385. A plaintiff can allege facts supporting constructive knowledge with facts showing either that the defendant caused the alleged defect to

exist or that the alleged defect existed for so long that the defendant had a reasonable opportunity to discover it, as well as with facts from which a reasonable inference could be drawn that the defendant should have known about the alleged defect before the plaintiff's injury. *Furtado*, 2021 WL 6194365, at *5–6. Such facts may be alleged in the plaintiff's petition or may appear in the record evidence attached to the plea to the jurisdiction or response. *See id.* at *6. Additionally, a plaintiff can establish actual notice of a dangerous condition with circumstantial evidence. *City of Gainesville v. Sharp*, No. 02-22-00061-CV, 2022 WL 11456903, at *7 (Tex. App.—Fort Worth Oct. 20, 2022, no pet.) (mem. op.).

The supreme court has recognized that the longstanding "time-notice rule"— "firmly rooted in our jurisprudence"—requires proof that a dangerous condition existed for some length of time before a premises owner may be charged with constructive notice thereof. *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 815 (Tex. 2002). What constitutes a "reasonable time" for a premises owner to discover a dangerous condition will vary depending on the facts and circumstances presented, and proximity evidence (i.e., how close to the condition an owner's employee is) "will often be relevant to the analysis." *Id.* at 816.

Here, there was evidence that the tree grate had been in its dislodged and partially collapsed state for at least fifty days and possibly at least eighty days (according to the February 2022 Google Maps photograph that Nelson "pulled directly from the internet"). Nelson alleges that the City had removed a bench that had been located directly to the south of the tree grate during the period when the grate was in its dislodged state, and that over ten different traffic-enforcement officers had been on the same block issuing over seventy tickets in the months preceding her injury—both of which demonstrate physical proximity of several City employees during the period the grate was dislodged. The record shows that the traffic-enforcement officers

12

are employees of the City's Transportation Department, and that the Right of Way Management Division (within the Austin Transportation Department) maintains safety for sidewalks. Further, there was evidence of prior reports to the City of that particular grate being similarly dislodged or displaced, the most recent being only a year before Nelson's injury.

The City argues that it is impractical and unreasonable for it to monitor the "vast network of sidewalks" in the City, which span 2,800 miles, and that conducting regular inspections of all the sidewalks would require the City to inspect them at a rate of about 56 miles per day to identify a particular dislodged tree grate in 50 days. However, this particular grate (1) had actually collapsed on the south side, creating a deep hole on that side; (2) was relatively large—occupying more than 50% of the sidewalk; and (3) was on a centrally located downtown sidewalk just a few blocks from the University of Texas at Austin. Due to these factors, the dislodged grate's dangerous condition would have been conspicuous to City employees during daylight hours (when most, if not all, of the parking tickets were issued), and a condition's conspicuousness reduces the necessary time period to establish constructive notice. *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567 (Tex. 2006). And we have already noted Nelson's allegations and evidence of City employees having been in the immediate vicinity in the few months leading up to her injury, including an inspection of the premises at 2100 Rio Grande in January 2022, and previous dislodgment of this tree grate.

Our ultimate inquiry in reviewing a trial court's ruling on a plea to the jurisdiction is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim within the trial court's subject-matter jurisdiction. *See Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.). We conclude that Nelson met this burden on the issue of the City's

13

constructive knowledge and that her specific allegations, supported by evidence, created a fact issue on whether the City knew or should have known of the tree grate's condition. *Cf. Furtado*, 2021 WL 6194365, at *6 (concluding that plaintiff had not referenced any evidence to support her mere assertion that City had constructive knowledge of sunken sidewalk, including how long condition had existed, but determining that plaintiff could cure defect by repleading); *Rangel*, 184 S.W.3d at 385 (holding that plaintiff had not created fact issue on City's constructive knowledge because nothing in record showed how long lid had been missing, there were no reports regarding the missing lid in two years, and no other recent service reports of any kind in area). We accordingly overrule the City's second issue.

### Does the TTCA's "discretionary function exception" apply?

As best we can understand the City's argument on its third issue (totaling half a page of its brief's argument section), the City contends that its decision to use removable, unsecured tree grates was a discretionary design decision for which the TTCA expressly does not waive its immunity. It explains that when the tree grates "become dislodged, this is not because they have been 'negligently repaired'" but because "they are designed to be removable." It cites Section 101.056 of the TTCA, which provides,

> This chapter does not apply to a claim based on:
>
> (1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or
>
> (2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

14

Tex. Civ. Prac. & Rem. Code § 101.056.

We fail to see how this statute applies under the circumstances, and the City does not further explain its significance except to cite *Tarrant Regional Water District v. Johnson*, 572 S.W.3d 658, 670 (Tex. 2019). But that case, while reaffirming the rule that governmental bodies are immune from liability for the discretionary decisions they make concerning the design of public works, recognizes that a governmental body's failure to *maintain* a public work consistent with its design is *not* necessarily discretionary. *See id.* Thus, to the extent that the City is arguing that its decision to install removable grates on sidewalks is protected by immunity, such argument is inapposite to Nelson's premises-liability claim based on the special defect created by the dislodged grate. Nelson is not complaining about the City's design decision to employ removable grates. She is complaining that the City failed to warn citizens about or to remedy an unreasonably dangerous condition of which it had actual or constructive knowledge. In other words, she alleges that the City negligently maintained the grate at issue or negligently implemented its decision to employ the grates. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (distinguishing between policy-level decisions that pertain to design of public works or formulation of policy and operational-level decisions that pertain to maintenance of public works or negligent implementation of policy). The City's assertion that it intentionally designed the tree grates to be removable does not, without more, bring Section 101.056 into play. We overrule the City's third issue.

***Was the dislodged grate unreasonably dangerous as a matter of law?***

In its fourth issue, the City argues that the dislodged tree grate is a "commonplace hazard" that is not unreasonably dangerous as a matter of law and that the trial court therefore should have granted its plea to the jurisdiction. *See United Supermarkets*, 646 S.W.3d at 802

15

(recognizing that although whether specific condition is unreasonably dangerous is "ordinarily a fact question," supreme court has held that "some particularly innocuous or commonplace hazards are not unreasonably dangerous as a matter of law"); *see id.* at 802 n.4 (noting that proof of "unreasonably dangerous condition" is element of invitee's premises-liability claim). Examples the supreme court cited in *United Supermarkets* as "particularly innocuous or commonplace hazards" include patches of ice on a sidewalk, a pedestrian ramp, naturally accumulated mud, and a wet floor in front of a self-serve soft-drink display. *See id.* at 803. In *United Supermarkets*, the supreme court similarly determined that a 3/4-inch divot in the pavement of a parking lot was "profoundly *ordinary*," did not pose an unreasonable risk of harm, and was not unusual relative to other small pavement defects—"[t]iny surface defects in pavement are ubiquitous and naturally occurring." *Id.* Factors courts may consider in making the "unreasonably dangerous" determination include the condition's size and whether it is clearly marked, whether it had previously caused injuries or generated complaints, whether it substantially differed from conditions in the same class of objects, and whether it was naturally occurring. *Id.*

In contrast to the divot in *United Supermarkets* and the examples cited therein, and viewing the pleadings and evidence in Nelson's favor, the tree grate occupied at least 60% of the sidewalk, and the hole created by its dislodgement appears from the photographs to be at least a foot deep and between eighteen inches wide and several feet long (a service-request report from May 2021 indicates that the same dislodged tree grate had created a "13in hole," that in the dark "somebody can fall in and hurt themselves," and that the dislodged grate was rectified by the City a month later). No signs or markings warn pedestrians not to walk on the grates (despite multiple successive tree grates being installed on the same sidewalk), the other grates on the

block at the relevant time appeared to be level with the sidewalk and were not dislodged, and at least two prior reports of the grate's dislodgment or partial collapse had been filed with the City within about a year of Nelson's fall. The dislodged tree grate is not innocuous or commonplace, and we decline to hold as a matter of law that it is not unreasonably dangerous—such determination is for the factfinder. We accordingly overrule the City's fourth issue.

## CONCLUSION

Having overruled the City's issues, we affirm the trial court's denial of the City's plea to the jurisdiction.

_____
Thomas J. Baker, Justice

Before Justices Baker, Triana, and Smith

Affirmed

Filed: December 22, 2023

17